STANCEL REYNOLDS *vs.* A. W. WALKER, Executor, &c.

The court reviewed and placed a proper construction upon the cases of *Hendrick* v. *Huddleston*, 5 S. & M. 42 ; *Austin* v. *Lamar*, and *Same* v. *Dean*, 23 Miss. 189, and *Browne* v. *Mullins*, 24 Ib. 204 ;— the latter case was overruled as being contrary to the provisions of the statute, Hutch. Co. 506, § 133.

In any sense in which the term " balance " is used in the statute in reference to an account stated by a guardian, it would properly express the amount due by the guardian on his account, whether such account was composed of money received as a part of the estate of the ward, or as the income of his property. The terms, " no reported balance of money in his hands," there-

fore, refer necessarily to any reported balance, whether consisting of the principal estate or income.

A guardian is not liable for interest to his ward, unless he is directed by the probate court to loan the money of his ward, or take it on interest. · *Hendrick* v. *Huddleston, Austin* v. *Lamar, Same* v. *Dean*, cited and confirmed.

Where the guardian has employed the money of his ward by lending it out at interest, or has used it in his own business, or has in any way made profit out of it, although he may not have done so with the sanction of the court, he is liable for interest.

A guardian is bound by law to render an annual account, and oftener if required, showing plainly the condition of his ward's estate. *Held*, that the guardian is not chargeable with interest on any money or balance reported in his annual settlement.

Where a guardian fails to return the amount of hire of the ward's negroes to the probate court, he is chargeable with interest on the amount not returned.

· Mr. Justice FISHER, *dissent.* — Adhering to the principles of the case of *Brown* v. *Mullins*, believing that it was only the balance, as shown by the annual account of the guardian, on which he was required to pay interest without an order of court.

IN error from the probate court of Hinds county; Hon. Amos R. Johnston, judge of the probate court of Hinds county.

The facts upon which the decision of the court was made, are contained in the opinion.

*Potter*, for appellant.

This case, as I think, is already decided. The law declared in *Brown* v. *Mullins*, 2 Cushm. 204, fully sustains the claim of the ward for interest.

That case holds the guardian liable for interest, where the estate of the ward is money which comes to the guardian; and so also a failure to hire out slaves renders him liable for hires.

That the guardian is also liable for interest on the balance of the annual income, if he fails to make annual report of such balance, in order that the court may direct its investment.

That the guardian cannot purchase slaves for the ward without order of court, and is entitled to no credits for such expenditures, if the ward declines to accept such slaves.

This decision is in strict conformity with the statute.

Guardians are required, within three months after appointment, to render a full inventory of the ward's estate; and to

render an account annually, or oftener if required, " of the pro-
duct of said estate, and of the sale and disposition of such
products and disbursements."

He shall account " for all profit and increase of the estate, or
annual value" of it.   Hutch. 505, § 128, 129.

The 133d section declares he shall not be chargeable with
interest on any balance of money in his hands, " unless he con-
sent to take the same·on interest," but the court may direct
him to place the same at interest.   This provision is based on
the assumption that he has duly accounted and reported the
money in hand.   If he has done so, it is the duty of the court
to order its investment; but if he neglects to do so, the court
cannot discharge its duty, and the guardian so in default must
be held to have consented·to take the money on interest.
Otherwise a guardian might retain money, failing to report for
twenty years, and thus wholly destroy the income of the estate.
He will not report and inform the court of the existence of the
fund; the court cannot therefore order its investment, and if
the guardian be not liable, the ward is at his mercy.

But I insist that the ward is, under the circumstances of this
case, entitled to compound interest, and for these reasons.

It was the duty of the guardian to report once at least every
year to the probate judge " the product," " profit and increase
of the estate," as well as of the principal.   In this case, he
should have reported the annual hires of the slaves, the annual
receipts for interest, &c. &c.   Upon such report made, the
balance of the annual income in his hands would become prin-
cipal, and it would become the duty of the court to order it to
be invested at interest.   The balance of the annual income of
the ward would thus be placed at interest; there would be,
annually, interest upon interest, — interest compounded with
annual rests.   Such would have been the result, to the great
enhancement of the ward's estate, if this guardian had per-
formed the simple duty required of him by law, and reported
to the court the income of his ward.   I think it plain that the
ward should suffer no loss by this default of the guardian; he
shall be decreed at least as much as he would have received if
the guardian had done his duty.

Reynolds *v.* Walker.

Nothing was reported as received for hires for the years 1837, 1839, 1840, 1841, 1842, 1843, 1844, and but partial receipts for 1838, 1845, 1846, 1847, 1848, 1849.

The decree should be reversed, and an allowance of compound interest given on all items and parts of items for hires, &c., that the guardian failed to report.

As to the exceptions. The first exception of the guardian should be overruled, and those taken by the ward should have been sustained.

The first exception for the guardian being sustained, exempted him from any charge for interest. The first taken by the ward was virtually sustained, and interest disallowed on charges against him. This was proper, as the guardian always had funds in hand to pay those items. The second exception of ward claims compound interest, and should have been allowed.

The third relates to values of hires; he was entitled at least to the appraised value.

The fourth relates to certain slaves, received originally as part of the ward's estate, and not accounted for. Of course, the guardian was chargeable with them.

The fifth relates to a charge of forty dollars for a pony. There was no proof to justify the charge, and this exception should have been sustained.

I cannot see how it can be plausibly contended that the guardian is not liable for interest, as we demanded it. He had slaves of the ward, and it was his duty to hire them out and collect hires. Failing to do so, he is liable for the value of the annual hires and interest. He must make good what the ward has lost by his default or misconduct. Had the hires been promptly collected and reported, they might have been invested annually, and compound interest obtained; the value of annual hires and compound interest is, therefore, the amount of loss sustained by the ward through default of the guardian. Of course there may be cases in which a guardian would not be held so liable. But there is no showing or excuse whatever, in this instance, on the part of the guardian. It is a case of gross

misconduct or wilful default, without excuse attempted, and he should be held liable accordingly.

*T. J.* and *F. A. R. Wharton,* for appellees.

The case of *Hendricks* v. *Huddleston* came into this court on an appeal from the probate court of Lowndes county, and the question presented for adjudication was the propriety of the dismissal of a petition to set aside a final settlement of a guardian, which alleged that the guardian had not charged himself with interest on notes for which he sold his ward's property, interest having accrued on those notes, and credit being only given for their face; and also because he did not charge himself with the interest for the money he had on hand. In this case the court use this language: " The main ground relied on is, that the guardian did not allow interest for the money in his hands. By law a guardian is not chargeable with interest, unless he has consented to take the money at interest, or unless it has been loaned out at interest, under the direction of the court;" and refer to How. & Hutch. Dig. p. 338, § 11, which is the same as § 133 on p. 506 of Hutch. Code, before cited. In this case the court express the opinion that he is only chargeable with interest in the two cases provided for in the express terms of this statute.

The case of *Austin* v. *Lamar et ux.* came into this court on appeal from the probate court of Yazoo county, which was rendered on a bill of review against appellant as administrator of Jesse Cole, and also as guardian of Mrs. Lamar. After disposing of the case as to the administration accounts by saying, " this may be laid out of view," and that " it only remains to say something of the guardian's account," the court holds this language as to the guardian's accounts: " The bill attacks them because Austin has not charged himself with interest for the money on hand, which it is said he should have done, first, because he loaned the money at interest; or secondly, that he blended it with his own and used it; or thirdly, if he did neither, still it was his duty to have loaned it at interest, and is therefore chargeable with damages for neglect of duty. Austin

denies in his answer that he loaned the money or used it, and says he kept it on hand, separate from his own, and was not authorized to loan it without an order for that purpose, and was not bound to obtain such order. The allegations of the bill in this respect are not sustained, and we pass the subject with the single remark, that a guardian is not liable for interest unless he is directed to loan the money of his ward, or to take it at interest. If it was his duty to obtain such order, the neglect to do so is a question sounding in damages to be tried in another court." This was, most certainly, a direct adjudication of a question directly presented by the record for the action of this court.

The case of *Austin* v. *Dean and Wife* was held to be a case of the same kind as *Austin* v. *Lamar et ux.*, and the same judgment rendered therein.

We have thought it proper to refer thus at length to the opinions in *Hendricks* v. *Huddleston*, and *Austin* v. *Lamar and Wife*, and *Austin* v. *Dean and Wife*, to show that at least the latter opinions are not obnoxious to the remarks of Mr. Justice Yerger in the opinion pronounced by him in the case of *Brown* v. *Mullins*, when he says, in speaking of the cases of *Hendricks* v. *Huddleston* and *Austin* v. *Lamar and Wife*: "In regard to these cases, we would remark, that they are not direct adjudications upon the point, but were expressions of opinion given without a full investigation of the question, and, therefore, not binding upon us as authoritative precedents."

We think a review of these cases must satisfy the court that the cases cited from 23 Miss., 1 Cush. R. were, at least, "direct adjudications upon the point," and even if given "without a full investigation of the question," that they are such as would be warranted by a further and most careful investigation of the question involved.

In *Brown* v. *Mullins and Wife*, it is decided that the legislature did not intend, by the statute before cited, to change the rule of law as to the guardian's liability for interest, except on balance which might annually remain over, after deducting disbursements for the education and maintenance of the ward from the product or income of the ward, and that still the

guardian is liable for interest on the principal of his ward's estate, as contradistinguished from the income or annual profits of his estate; and that the words "balance of money, in the statute, simply mean the balance that may remain in his hands of the annual income of the ward over and above the disbursements for the education and maintenance of the ward." And again, it is in that case decided that a failure of a guardian to lend the money of his ward, so as to produce a fund for the education of the ward, would be as much a breach of his duty, as would a failure to hire out his slaves or cultivate his plantation.

The only reason assigned by the court, in this decision, in support of such a construction of this statute, is in these words: "This seems to be manifest from the fact that the term 'balance,' used by the legislature, is contained in a section of the statute which refers to the account of the guardian on the subject of expenditures in maintaining and educating the ward, and which account the guardian was required to exhibit annually to the court."

If this proposition were now being discussed for the first time before this court, we should insist earnestly, that this reason was not only insufficient to convince the mind of the court that such was the legislative design, but that it was not a plausible argument in support of this view of the subject, and, really, "a distinction without a difference."

In this connection we submit that the section of the statute to which this decision is applied, is but a portion of the general statute of 1821, in relation to guardians and wards; (see Hutch. Code, p. 503); and that a comparison of this with other sections of this act will establish a different conclusion from that now being discussed. The 128th section of this act (Hutch. Code, p. 505) provides that every guardian shall, within three months after his appointment, deliver into the orphans' court, on oath, an inventory of the estate, real and personal, which he shall have received or taken possession of, "and shall exhibit once in every year, and oftener if thereunto lawfully required, an account of the product of the said estate, and of the sale and disposition of such product and disbursements," &c. The

Reynolds *v.* Walker.

133d section (Hutch. Code, p. 506), follows and provides "that every account of a guardian shall state his expenditures in maintaining and educating the wards, not exceeding the income of the estate, unless allowed by the court," &c., "and for no balance of money in his hands shall he be charged with interest, unless he shall consent to take the same on interest; but the court may direct him to place the same at interest, taking bond," &c. The 135th section of the same statute, on same page of same Code, that guardianship shall cease and determine when the ward shall arrive at the age of twenty-one years, or be lawfully married; "and in either event the guardian shall forthwith render a final account of his guardianship to the orphans' court, and shall deliver up, agreeably to the order of said court, to the said ward (or to the husband, as the case may require) all the property of such ward in his hands," &c.

. Now, can it be that the legislature intended by the 128th and 133d sections of this act to provide that a guardian's account should not show what money remained in the guardian's hands, as well from the principal as from the income of the ward's estate? We cannot consent that, in providing that these accounts should exhibit "the product of the said estate, and of the sale and disposition of such product and disbursements," the legislature intended to require that no other matters of account should be embraced in these accounts. We think the intention was, clearly, to require that these specified matters of account should be embraced in such account, and to leave other matters of account to be governed by the rule which existed previous to the passage of the act. We submit that this is the correct legal inference.

But suppose that, as decided in *Brown* v. *Mullins and Wife*, these accounts should only embrace matters of sale of ward's estate, and the income or profits thereof, and disbursements, would it not follow that any balance which might be due by the guardian on such settlements, would but partially reflect the true condition of the accounts, in cases where money came into the hands of the guardian, as the principal of his ward's estate. Would it not have been more consistent with

22 *

legislative wisdom to provide that these accounts of the guardians should reflect the exact condition of the estates of wards?

Again, if the rule be correctly established in *Brown* v. *Mullins and Wife*, what state of case would result on the final settlement of the accounts of a guardian? Assuredly there is nothing in the 135th section of the act before referred to which changes or alters the rule established in the 128th section of that act, as to what the accounts shall embrace; and thus the necessary result would be, that, instead of this final settlement representing the exact state of accounts between the guardian and ward, it would, in all cases where the guardian had received money as principal of his ward's estate, but represent the difference between the income of the ward's estate and disbursements made for the ward's support and education, and the costs and expenses consequent on the guardianship.

Again, we insist that if the court shall consider it necessary to look beyond the plain language used in the 128th section of the statute now under review, for the purpose of ascertaining the legislature's intent, such construction must be placed upon this section as would evince wisdom, rather than a want of it, on the part of the legislature.

In this view of the case, we insist the court must be enabled to ascertain and assign some sufficient reason why the legislature should have considered it consistent with an enlightened sense of justice to require that a guardian should pay interest on a certain sum of money in his hands belonging to his ward, which in many cases would be trifling compared with other money received by him as the income or profits of his ward's estate, and should not pay interest on such larger sum, simply because one sum was the principal and the other the income of the ward. It was the legislative design to protect the interest of the ward. It is but reasonable to suppose that a parent would not, by will, be disposed to leave a large sum of money to a minor child, if he had other property and adult children at the time of his death; or that, if opposed to making a will, he would so invest his money as that the application of the rules of law to his estate, after his death, would result in such a dis-

Reynolds *v.* Walker.

position of his estate as a prudent and sensible person would consent to. But, again, it is but reasonable to suppose that the legislature would be able properly to anticipate the fact that, in many, if not in a majority of cases, the profits or income of a minor's estate for a series of years would exceed in amount any sum of money which would constitute a part of the principal of a ward's estate ; and if so, that provision would be made as well to protect the income as the principal of the ward's estate.

If the positions assumed by us in this argument, sustained as we think they are by the three decisions before cited by us, and the statutes of 1821, shall induce this court to dissent from so much of its opinion in *Brown* v. *Mullens and Wife*, as recognizes a distinction between the liability of guardian for interest on money as the principal of his ward's estate, and on such as is the balance of the income of the ward's estate, after deducting disbursements for his education and support, and to consider that a guardian is not liable for interest on the one more than the other, we shall consider that, as to so much of the opinion in this case as relates to a guardian's liability for interest on any balance of money in his hands, which is the result of deducting disbursements for the ward from the profits or income of his estate, in the language used by the court in this last-named case, the remarks of the court " are not direct adjudications upon the point," . . . " and, therefore, not binding as authoritative precedents." It may be this language was intended to apply mainly to the decision in *Hendricks* v. *Huddleston*, as in that case this court, after holding that a petition was properly dismissed, go on to express an opinion as to a point raised in the petition as to the liability of a guardian to pay interest on money received for the sale of property (principal, and not profits) of the ward.

If the decision in this case is not to be regarded as an authoritative precedent, for the reason here referred to, why is not the portion of the decision in *Brown* v. *Mullins and Wife* obnoxious to the like reason? In this case the court go on to remark upon the liability of the guardian both as to the principal and income of his ward's estate, although in the preceding portion of their opinion, (page 205, conclusion of first para-

graph,) they say, " But we are unable to tell, from the decree pronounced in this case, what items of it were disallowed, or upon what basis the same was settled by the probate judge."

If any question could have been presented by the record in that case which would have enabled the court to pronounce an opinion which could be regarded as " an authoritative precedent," it could only have been as to liability for interest on the principal of the ward's estate, for the reason that there is nothing mentioned in the record, as referred to by the court, in relation to any profits, or to show that any profits were accounted.

We then submit, in conclusion of our remarks in relation to this decision, that it cannot be regarded as " an authoritative precedent " as to any matter involved, in the record, between the appellant and appellee in case now being presented for the adjudication of this court; or, if it can be so regarded, then only as to the liability of appellee's testator for interest on the money received by him as the principal of his ward's estate, and that in this respect it is opposed by the weight of authority to be found in the decisions of this court before cited by us, and also by our statute.

But if the court shall now decide that appellee's testator shall be charged with interest on the money received by him as the principal of his ward's estate, we then submit that interest can only be charged against him on the sums of $200 received by him to equalize the value of his ward's share of the negroes, on the division of his father's estate, and on the sum of $346.66 received by him from the sale of his ward's lands, as all the other principal items charged against him by the auditors were for the hire of his ward's negroes, unless this court shall determine that the notes of McCall for $345 and $570.70 were not given for the hire of negroes, as contended was the fact in the former portion of this suit.

Again, we submit that appellee's testator should not be chargeable with interest on money received by him as the income of the ward's estate, even under the decision in *Brown* v. *Mullins and Wife*, because the record shows that he did not fail to exhibit annual accounts during the entire time he was acting

as such guardian, to the probate court. The record shows that, during this time, he exhibited to that court twelve annual accounts of money received and disbursed for his ward, commencing in the year 1837, the first year after his appointment, and ending in 1849, the year previous to his death.

It may be urged that these several accounts do not, in merchant-like form, state the several balances due. We reply that, upon the principle of *id certum est, quod certum reddi potest,* these several accounts do show the balances due, nothing remaining to determine such several balances, where none such are " struck," but to deduct the less side of the account from the greater.

Again, the bill of exceptions does not show that any oral evidence was offered on the hearing of these exceptions to contradict the accuracy of these several annual accounts.

Again, we contend that as our statute (Hutch. Code, p. 506, sec. 133) does not make it compulsory on the part of the probate court to require a guardian to loan out any balance of money in his hands, on his annual settlements, nor on the guardian either to take it at interest, or to loan it, still the guardian cannot be held liable for interest, whether he failed to present his accounts annually or not, unless the probate court had directed him to loan it, or unless he did so loan or use it for his own benefit.

The record does not show that he was required by the court to loan any money of his ward, or that he did so loan or use it for his own benefit; in fact all, except the latter fact, is admitted by appellant in the record.

If this court shall consider that appellee's testator should be charged with interest on either the principal or income of his ward, we insist that such interest should be estimated for the time on such sums until the final adjustment of his accounts under the decision of this court, and without any rests, so as to charge him with compound interest.

If the court had required him to loan it at interest, surely he would only be chargeable with such legal interest as he received; and if he had agreed to take it at interest, he could only be charged with interest up to the time he should refuse to

continue it.at interest. We do not think this court could consent that he should be charged with interest as though the principal and interest were collected annually, and each again loaned for a year; and yet this seems to be what appellant demands in his first exception.

If appellant should contend 'that the probate court erred in allowing the second item of the third exception of appellee, we refer to pages 20 and 21 to show that the testator was entitled to credit for $186.98, instead of $179.73. This will be manifest by referring to the previous portions of this brief, in support of the other item of credit claimed in this exception.

If objection should be urged to the action of the court in allowing the several credits claimed in appellee's 4th exception, except the item of $2,074 for negroes purchased of E. Darell, we refer to pages 57 and 58 for full proof of the payments claimed, and that the notes were given for the hire of appellant's negroes, and were fully secured.

Mr. Chief Justice SMITH delivered the opinion of the court.

This is a controversy arising out of the final settlement of a guardian's account; and is brought before us by writ of error from the court of probates of Hinds county.

The principal question in the case is, whether a guardian is, by the statute, chargeable with interest upon the money of the ward remaining in his hands, unless he has consented to take it, or has been ordered by the court to lend it on interest.

This question has arisen heretofore, on several occasions, and has been decided by this court. It arose, in the first instance, in *Hendricks* v. *Huddleston,* 5 S. & M. 422, decided at the November term of this court in 1845. It was next presented in *Austin* v. *Lamar and Wife*, and in *Austin* v. *Dean*, 23 Miss. R. 189, determined at the same time in 1851; and lastly, in *Brown* v. *Mullins*, 24 Miss. R. 204, decided in 1852. These cases do not harmonize, and we are now asked to review the question.

In the case of *Hendricks* v. *Huddleston*, the court say, "by law a guardian is not chargeable with interest unless he has consented to take the money at interest, or unless it has been loaned out at interest under the direction of the court." In the cases of

*Austin* v. *Lamar and wife*, and *Austin* v. *Dean*, the whole estate of the wards consisted of money which had remained for several years in the hands of the guardian. The guardian never applied for the consent of the court to take the money himself, nor for an order of court directing him to put it out at interest; and no order for that purpose was made. The guardian denied having used the funds of his wards, and there was no proof in support of the allegation by which he was charged with having done so. Upon this state of facts it was holden by this court, the late chief justice delivering the opinion, that "a guardian is not liable for interest unless he is directed to loan the money of his wards, or to take it on interest." "If it were his duty," say the court, "to obtain such order, the neglect to do so is a question sounding in damages to be tried in another court."

In the case of *Brown* v. *Mullins*, the doctrine was holden, that in cases in which the estate of the ward consists of money in the guardian's hands, the guardian is liable to pay interest on such sum or estate, whether he may or may not consent to take it on interest, or whether he has or has not been directed to loan it at interest. In this case the court recognize the right of the guardian, and enjoin it upon him as a duty, to put out at interest the money of his ward, if it be principal, and not the annual product of his estate. The language employed is explicit and not to be misunderstood. The court say, "the failure of the guardian to lend the money of his ward, in such a manner as to produce an annual income or fund for the education and maintenance of the ward, would be as much a breach of his duty as guardian, as a failure to hire out slaves belonging to his ward, or to cultivate his plantation. In our opinion, the words 'balance of money' in the statute, simply mean the balance that may remain in his hands after the annual income of the ward over and above the disbursements for the education and maintenance of the ward."

It is manifest that the principles laid down in this decision are irreconcilable with the doctrine heretofore maintained by this court on the same subject. It hence becomes our duty to adhere to the decision pronounced in *Brown* v. *Mullins*, or to reinstate the doctrines previously recognized. The decision in

*Brown* v. *Mullins* is of very recent date. It is not fortified by succeeding precedents; nor is it sustained by the transactions of society, which, when moulded and fitted to an established rule, regulating the rights of the community, give to it a vigor and strength, independent of any intrinsic merit which the rule itself may possess, and render the task of innovation one of delicacy and hazard. But it is a deliberate adjudication upon a question of great practical importance, made after a careful examination of the subject. Hence, independent of the very great consideration due to the opinions of the judges, whose decision it is, it demands from us the greatest consideration.

The statute in reference to the subject under consideration, provides, that "every account of a guardian shall state his expenditures in maintaining and educating the ward, not exceeding the income of the estate, unless allowed by the court; and for no balance of money in his hands shall he be charged interest, unless he consent to take the same on interest; but the court may direct him to place the same at interest, taking bond to the orphan, with security approved by the court." Hutch. Dig. 506, § 133. Several other provisions of the statute define additional powers and prescribe other duties of the guardian, a reference to which will enable us to ascertain with greater certainty the true interpretation of the provision under consideration.

The 128th section of the statute provides that every testamentary or other guardian shall, within three months after his appointment and acceptance of such office, deliver into the office of the register of the orphans' court, on oath, an inventory of all the estate, real and personal, which he shall have received or taken possession of, and shall exhibit once in every year, and oftener if thereunto lawfully required, an account of the product of said estate, and of the sale and disposition of such product and disbursements. Hutch. Dig. 505.

By the next section it is provided, that any guardian who may fail to deliver in such inventory, or render such account, shall, by order of the court to which he is answerable, be summoned, and if he remain in default, his bond may be put in suit, directing further that the court may, for any good and sufficient cause, displace such guardian. Ib. 505.

The 130th section, amongst other provisions, directs that any guardian having real estate under his care, shall either cultivate the same with the slaves, stock, and utensils belonging to the ward, or to be purchased with his or her money, with the approbation of the court; or he shall lease the same from year to year, or for any term not exceeding three years, and within the nonage of the ward; or he may, with the approbation of the court, undertake the estate on his own account, and be answerable for the annual value, which is to be ascertained under the direction of the court.

These several provisions of the statute at once manifest the care with which the legislature guarded the rights of orphans, and illustrate the wisdom of that body. The perfect safety of the estates of minors was, as it should be, a cardinal consideration with the legislature. But whilst securing that object it was studious to make the fund productive. How did the legislature propose to effect this purpose? Certainly not by committing the estate of the ward to the unrestricted discretion of the guardian. The perfect accountability of the guardian was designed to be secured, by placing him in almost every matter of importance under the supervision and control of the court. Nothing, scarcely, was left to his individual discretion. Within a very limited time the guardian is required to return an inventory, on oath, of the estate. He is required yearly, or oftener if directed to do so, to account for the income and its disbursement; and the court is armed with the authority to displace him for a failure or neglect to perform his duties. With reference to the real estate of the ward, the guardian is vested with the discretion to lease it for a limited time, or to cultivate it with the slaves and stock of his ward; but he cannot rightfully undertake it on his own account without the consent of the court. In these cases the estate itself is not put at hazard, and in the last instance the value of the income is to be ascertained by the court. Without these statutory provisions this power could have been legally exercised by the guardian. These provisions, specific and minute in their details, were not imposed without an object. Not one word is said in the statute, from which the most remote implication can arise, that it was intended.

to vest the guardian with the authority, on his individual discretion, to use the estate of the ward, consisting of money, or to lend it out at interest. Indeed the very reverse is the natural inference. But that it was not intended to authorize a guardian, at his own discretion, to lend at interest any portion of the money of his ward, or to take it himself on interest, is not left to inference. The language of the 133d section, above quoted, is to our minds conclusive on the subject.

Words used in a statute are to be understood according to their usual interpretation, especially where there is nothing in the context which indicates a meaning different from the ordinary acceptation. When money of a ward is received into the hands of his guardian, he has, to the extent of the sum thus received, become the debtor of his ward. There is no conceivable method in which a guardian thus situated in rendering his guardianship account, would not appear the debtor of the ward for the sum thus received, standing on the account as a balance against him. It cannot be doubted, therefore, that in any sense in which the term " balance " is used in reference to an amount stated, it would properly express the amount due by the guardian on his account, whether such amount was composed of money received as a part of the estate of the ward, or as the income of his property. The terms, " no reported balance of money in his hands," therefore, refer necessarily to any reported balance, whether consisting of principal estate, or of income, unless there is something which plainly shows that the legislature had reference exclusively to the reported balance of the annual income or product of the estate. We think there is nothing which indicates such an intention, but the contrary.

The construction which would confine the terms used in the statute to the " reported balances " of the annual income, and authorize the guardian to lend out at interest the money received as a part of the ward's estate is, manifestly, opposed to the spirit of the statute regulating the duties and defining the authority of the guardian. This construction makes the guardian answerable under all circumstances for interest on such part of the ward's estate. It thus makes the guardian a forced borrower. It compels the guardian to use the money of the

ward to make a profit, in order to meet the charge of interest. It encourages him to risk the money by investment or in speculations, in which not only the income but the estate itself may be lost, and this he might do without any violation of his duties; for if he have the unrestricted right to lend it, he must have also the right to employ it in the manner which he deems the best. If this construction is the proper interpretation of the meaning of the legislature, cases might arise under its operation which would not greatly illustrate its wisdom or consistency. It may happen, as it has sometimes, that the entire estate of the ward will consist of money. In such a case, the guardian would have no right to take the income at interest without the consent of the court, but he would have the unquestioned right to use the whole estate without the consent or direction of the court. He could not lend the income reported as a balance without an order of court for that purpose, and an approval of the security offered by the borrower for its repayment; but he might lend the whole estate without the sanction of the court, and without taking any security whatever.

Again, the estate of the ward, — and this we may imagine frequently occurs, — may consist of a productive plantation and slaves, producing an income which, after defraying the expenses incurred for his maintenance and education, leaves a large annual balance. In such case it would be neither consistent nor wise to require an order of the court before the balance could be put out at interest, if it were wise and politic to vest in the guardian the unrestricted right, on his own discretion, to lend the whole estate, if it should consist exclusively of money.

Let it be supposed, again, that the estate of the ward consists exclusively of money, which the guardian has deemed it expedient to lend out at interest. This act must be shown in his annual report. When the money thus loaned is repaid, the amount must be charged in his annual account, with his current disbursements and receipts. It will in this way constitute a part of the "reported annual balance." Hence, under the plain and express language of the statute, he will no longer

have the right to lend it again, or to take it on interest, without the order or consent of the court.   Upon the whole view of the subject, we cannot doubt that the construction of the statute applied in the cases of *Hendricks* v. *Huddleston* and *Austin* v. *Lamar,* is the true interpretation.

But where the guardian has employed the money of the ward by lending it out at interest, or has used it in his own business, or has in any way made profit out of it, although he may not have done so with the sanction of the court, he is liable for interest.   A guardian is bound by law to render an annual account, and oftener if required, showing plainly the condition of his ward's estate.   This is required in order to enable the court to discharge the duties imposed upon it, by ordering the funds of the ward to be loaned at interest, or invested for his benefit.   Where, therefore, the guardian has failed to account for the profits or income of the estate, and thereby prevented a profitable disposition of such income, he should be held accountable for interest upon such income.   In such cases the court may presume that he has used the money for his individual profit, or has consented to take it on interest, and may charge him accordingly.

In the case before us, the estate of the ward consisted of land, slaves, and two hundred dollars in cash.   The money was reported in the inventory.   The land was sold under an order of the court, and the proceeds duly reported when collected by the guardian.   No order of the court was made by which he was required to lend at interest any balance of money reported in any of his annual settlements, nor did he consent to take it at interest.   The guardian is therefore not chargeable with interest on any money or balance reported in his annual settlements.

The guardian failed to account for several years' hire of the ward's slaves, the aggregate amount of which, according to their average value as fixed by the auditors, amounted to the sum of $2,296.   Upon that sum, or upon the amounts due for hire, and which the guardian failed to report and account for, the plaintiff in error is entitled to interest.

Reynolds *v.* Walker.

We are of opinion that the guardian should not have been charged with the notes made by McCall, one for $345, due in 1837; the other for $570, due in 1838.

There is no direct proof that the notes were made to the guardian, that they were collected by him, or that he could have done so. It is highly probable that these notes were given in consideration of the hire of the ward's slaves, as his whole estate consisted of the slaves returned upon the inventory, $200 in cash, and the land, the proceeds of the sale of which are accounted for. And it was in proof that McCall had hired the ward's slaves for several years. If these notes were in fact given for their hire, the ward will be paid by the allowance for hire, and interest thereon, for the years in which no hire was reported.

Deducting the amount of these notes from the amount of the decree, and allowing interest on the amounts due for hire which were not reported or accounted for by the guardian, the plaintiff in error is still entitled to more than he has been allowed by the decree of the court of probates.

We reverse the decree, order the account to be restated, and a decree entered in this court in accordance with this opinion.

Mr. Justice FISHER dissented, stating his adherence to the principles of the decision in *Brown* v. *Mullins*, and that it was only the balance as shown by the annual account of the guardian, on which he was required to pay interest without an order of the court, the annual account only embracing the income of the estate, whether consisting of property or money, and not the property itself.