### G. P. CRUMP *et al.*, Administrators, *v.* CHARLES GEROCK and WIFE.

1. GUARDIAN AND WARD: INTEREST: LIABILITY OF GUARDIAN FOR.—A guardian is not chargeable with interest on any money in his hands, unless he has consented to take the same at interest, with the approbation of the court, or has been directed by the court to place it at interest, or unless he has employed it by

using it in his own business, or by loaning it to others, or has in some way made a profit out of it. *Roach* v. *Jelks; Reynolds* v. *Walker,* 29 Miss. R. 250.

2. GUARDIAN AND WARD : LIABILITY OF GUARDIAN FOR INTEREST ON HIRE OF SLAVES OF WARD.—If a guardian hire the slaves of his ward, and in his annual accounts reports the amount of hire, and charges himself with it as so much cash in his hands, his liability to pay interest on the amount so reported is not different from that of other funds in his hands belonging to the ward.

3. EVIDENCE: PLEADINGS : UNSWORN PLEADINGS AS EVIDENCE.—Admissions and declarations of facts contained in unsworn pleadings are not admissible as evidence against the party pleading, nor is he estopped by an expression of opinion therein as to his legal rights and liabilities.

4. GUARDIAN AND WARD : LIABILITY OF GUARDIAN FOR NOTES NOT COLLECTED.—A guardian is liable for the amount of principal and interest of notes belonging to his ward, which the guardian, by his negligence, fails to collect.

5. GUARDIAN AND WARD : REMOVAL OF PROPERTY FROM ONE COUNTY TO ANOTHER : EFFECT OF SETTLEMENT.—The settlement of a guardian with the Probate Court, made for the purpose of removing the property of his ward from one county to another, is an accounting so far as the guardianship had extended, and conclusive only as to such matters as were embraced in the settlement, and as to the court in which the proceedings were had.

6. GUARDIAN AND WARD : TRUSTEES: LIABILITY FOR COMPOUND INTEREST.—A trustee is not chargeable with compound interest, except where he has been guilty of some fraud, or where there is reason to believe that he has made large profits by the use of the trust funds, which he conceals or refuses to disclose.

7. PROBATE COURT: BILLS OF REVIEW: ANNUAL SETTLEMENTS, HOW CORRECTED.—A bill of review will only lie to a final order or decree, and is not the proper remedy for a guardian who, before final settlement, seeks to correct a mistake in his annual accounts.

8. PROBATE COURT: GUARDIAN AND WARD : CORRECTIONS OF ERRORS IN ANNUAL ACCOUNTS ON FINAL SETTLEMENT.—A guardian, on the final settlement of his guardianship, will be allowed to correct errors to his prejudice in his annual accounts.

9. PROBATE COURT: PRACTICE: REFERENCE TO COMMISSIONER.—The Probate Court, in referring a cause to a commissioner to state an account, need not specify the rate of interest that is to govern the commissioner, unless it is intended to charge a different rate from that fixed by law; nor is it erroneous, though unusual, for the court to direct the particular amounts to be charged for principal and interest.

APPEAL from the Probate court of Yazoo county. Hon. Robert Bowman, judge.

*D. Jones,* for appellants, contended,

1. That the guardian was not liable for interest, and cited

*Hendricks* v. *Huddleston*, 5 S. & M. 422 ; *Austin* v. *Lamar*, 23 Miss. R. 189, 193 ; *Reynolds* v. *Walker*, 29 Miss. R. 250.

2. That there was no proof showing that the notes, with which the guardian was charged in the court below, were payable to the guardian or collected by him, and that the charge was erroneous. *Reynolds* v. *Walker*, 29 Miss. R. 269 ; *Berry* v. *Parks*, 3 S. & M. 625 ; *Cason* v. *Cason*, 31 Miss. R. 578.

3. That it was error to direct an account to be taken with interest without instructions as to the rate of interest. 1 Barb. Ch. Prac. 514, 515.

*A. P. Hill*, on same side.

*R. S. Holt*, for appellees, contended,

1. That the guardian was chargeable with interest on the hire of the slaves of the ward on two grounds : 1st. That the hire was a debt, which the guardian owed and had never paid ; 2d. That he had consented or agreed to pay interest. That the guardian was chargeable with the highest rate and even with compound interest. 2 Kent's Com. 229, 230 ; 2 Story's Eq. 1277 ; 1 Johns. Ch. R. 623 ; 24 Miss. R. 410 ; 33 Miss. R. 553 ; 35 Miss. R. 360.

2. That the guardian was properly charged with certain notes, the property of his ward, and for which he had failed to account. The notes were returned in the inventory of the guardian to the Probate Court of Hinds county, and was a part of the ward's share of the estate of Richard Roberts, deceased, of which the guardian was administrator. The notes were proven to be good and collectible, and were never accounted for, except in an affidavit to one of his accounts he states he has collected *some* of them.

ELLETT, J., delivered the opinion of the court.

On the settlement of the final account of George Q. Roberts, as guardian of Eliza Jane Roberts (now Gerock), presented to the Probate Court by the appellants, as. administrators of said Roberts, several questions arose which are brought to this court for adjudication.

*First.* During the continuance of the guardianship, the guar-

dian every year hired the slaves of the ward, under the authority of the Probate Court, by which the amount of the annual hire was fixed, and the sum so ascertained was regularly carried, year after year, into the guardian's accounts, and there charged to him as a part of the income of his ward, the balances being regularly transferred from each account to the next. On the settlement of the final account, the ward insisted, by a proper exception, that interest ought to be charged against the guardian on all these sums, from their dates, at ten per cent. per annum, compounded annually. The judge sustained this exception so far as to charge the guardian with simple interest on all the sums so reported and charged by him in his said annual accounts, for the hire of the slaves of the ward; and this action of the court is assigned for error.

The legal question involved in this point has been considered in another case at this term (*Roach* v. *Jelks*), and the principles laid down by this court in the case of *Reynolds* v. *Walker*, 29 Miss. 250, in regard to the liability of guardians for the payment of interest on money in their hands, as such have been announced as the settled doctrines of the court. The rule is, that under our statutes a guardian cannot be charged with interest on any balance of money in his hands on his accounts, unless he has consented to take the same at interest, with the approbation of the court, or has been directed by the court to place the money at interest, or unless he has employed it by using it in his own business, or by loaning it to others, or has in some manner made a profit by it. This was equally the rule before and since the Rev. Code, no material change having been made in the statutes on the subject.

Counsel for the appellees endeavor to maintain the charge on two grounds:

First, that the hire of the slaves was a debt of the guardian to his ward, which he owed and had not paid; and secondly, that he had agreed or consented to pay the interest.

As to the first of these grounds, it may be remarked that the guardian charged himself with the hire as it fell due, in his annual accounts, as cash in his hands. Being at the same time

the party liable to pay, and the person entitled to receive, there was no possible way in which he could make any payment of the money except by charging himself with it as cash in his accounts. By doing so, he brought the money directly under the jurisdiction of the Probate Court, and involved his sureties in liability for its administration. After being so reported, it remained a debt due by the guardian to the ward in no other sense than any other money in his hands belonging to the ward derived from any other source; and the liability of the guardian to pay interest upon it is not different from his liability to pay interest on any other funds in his hands.

As to the second ground relied on to sustain this charge of interest, to wit, that the guardian agreed or consented to pay it, the proof in support of the fact alleged is as follows: A record was given in evidence of a suit in the Chancery Court of Yazoo county, brought in November, 1857, by George Q. Roberts, the guardian in his individual right, against the administratrix of the estate of his deceased brother, in which he alleged that the slaves of his ward, hired by him as above stated, had been worked by him for several years on a plantation owned and cultivated by himself and his brother in partnership, and sought to recover one-half of their hire, for the time they were so employed, from the estate of his said brother. In the course of his bill of complaint, and also in an amended bill in the same cause, he states " that he is, as guardian, responsible to his ward for these several amounts for the hire of said negroes, and for interest on each year's hire, from the end of the year." This averment is relied on as the proof of the alleged agreement to pay interest on the hire, but it is not entitled to have any such effect. It does not take the form of a promise or agreement with his ward, or with anybody else, to pay such interest; and it can, at the most, be regarded only as the expression of his opinion that by law he is responsible for it. But even that would be giving it an importance that is not due to it. The bill is not sworn to, and was not signed by the party, and there is nothing to show that he ever saw it or knew what was in it. Such averments are generally the mere act

49

of the counsel preparing the bill and stating the case according to his own views of the relief to which his client may be entitled. It is on this ground chiefly that unsworn pleadings in a cause, at law or in equity, are never admitted as evidence against the party pleading, as admissions or declarations of the facts contained in them.    1 Phil. Ev., 358 ; Gres. Eq. Ev., 322 ; 2 Phil. Ev., C. and H., note 331 ; Banbury Peerage Case, 2 Selw. N. P. 765.    Still less could a party be bound by an expression of opinion as to the extent of his legal rights or liabilities.    The defendant in her answer to this part of the bill, in much closer conformity to the true rule, denies the liability, and insists that the guardian is not chargeable with interest upon annual balances, unless instructed or directed by an order of the Probate Court to retain the same upon interest, or to loan it out, or unless he agrees to keep the same on interest.    But neither the bill nor the answer is any proof for or against the existence of the liability.    There being, then, no evidence of any promise or contract for the payment of interest, and no pretence that the Probate Court directed the guardian to loan the money on interest, or that he consented to take it at interest, or that he used it, or loaned it, or made a profit by it, it was erroneous for the court to allow interest on the sums charged in the accounts for the hire of negroes.

*Secondly.*    Roberts was first appointed guardian in Holmes county, but being desirous to remove the guardianship to the Probate Court of the county of Yazoo, he proceeded under the statute then in force (Hutch. Code, 677, article 12, section 3), to settle a final account there, and having shown that he had been appointed and qualified in the county of Yazoo, his letters in Holmes county were revoked, and he was discharged from any further responsibility on account of the same.    On this final account there appeared a balance in his hands, as guardian, of $455.17, which he was ordered to pay over according to the statute.    This balance was the residue of the hire of the negroes for the years 1848 and 1849, after deducting the expenses of the ward, and commissions allowed the guardian. On the exceptions filed by the appellees, the court below

charged the guardian with interest on this balance of $455.17, from the date of the final settlement of the guardianship in Holmes county, to the time of the decree appealed from, and this action of the court is also assigned for error.

We think this item stands upon a different footing from those we have been before considering. The object of the final settlement in the Probate Court of Holmes county was to remove the property, and the administration of it, from that county to Yazoo. That settlement ascertained a balance of money to be in the hands of the guardian. It was then his duty to report that balance, together with his inventory of all the other property of his ward, to the Probate Court of Yazoo. If this were not so, then it would stand as a final decree of a court of competent jurisdiction, in favor of the ward against the guardian, occupying the same footing as any other judgment, and of course bearing interest. But it was his duty to report the amount as money in his hands, so that the court in Yazoo could, in its discretion, have ordered him to invest it at interest. We find nothing in this voluminous record to show that he ever made such report, and, having failed to do so, he must be understood to have consented to take the money on interest, or to have retained it for the purpose of employing it in his own business, or for his own profit. It is not shown that the amount charged for interest on this balance is excessive.

*Thirdly.* The court below sustained an exception to the final account, and ordered the guardian to be charged with the amount of certain promissory notes, specified in the exception and in the decree, with interest on their several amounts from their maturity. These notes had been a part of the estate of the father of the ward, and had been allotted to her in the division of his estate. The guardian reported them to the Probate Court of Holmes county, in his inventory of the property of his ward, without distinguishing them as sperate, desperate, or doubtful; but he made no report of them to the court in Yazoo, after the transfer of the guardianship to that county. In an account filed in the Court of Holmes county in June, 1850, he states that he has collected some of the notes mentioned in his inven-

tory, but cannot mention the precise sum ; and he never charged himself in any account, with any sum received from that source. The exception was sustained only as to a part of the notes contained in the inventory, and, in reference to these, it was proved that the parties by whom they were made were solvent.    There does not seem to have been any proof of the actual collection of any particular note ; nor was there any proof, by the production of the notes, or otherwise, that any of them had not been paid. On this state of the facts, we think it was clearly proper to charge the guardian with the amount of the notes mentioned in the decree, and interest from their maturity.    No other conclusion could be drawn from the proof than that he had received the money, or that it was lost by his negligence.

The appellants pleaded the final settlement in Holmes county, in April, 1852, in bar of any relief touching any matter originating previous to said settlement ; and their counsel contend that the court cannot go behind that final settlement, to make the estate of the guardian responsible for these notes that were included in his inventory in Holmes county ; the conclusive presumption of law being, as they insist, that they have already been accounted for in the said settlement.

This argument takes an erroneous view of the nature and effect of the settlement in the Holmes Probate Court.    That was not a final settlement of the guardianship at all, but only an accounting so far as the guardianship had then extended, with a view to a transfer of the property and the guardianship to another jurisdiction, to be there taken up at the point where it terminated in the court of its origin, and then to be carried on very much as if no such interruption had occurred.    The settlement in Holmes was conclusive only as to such matters as were actually embraced in it, and could no more protect the guardian from a future accounting for the securities which he held belonging to his ward, and not included in the account, than for the slaves or other property remaining in his hands. On the removal of the guardianship to another court, he became liable there to account for all property that continued in his possession as guardian.    The settlement made as incidental to such

removal, was not final in its nature and character, but only final as to the particular court in which the proceedings were had, and as to the particular subjects of which it purported to make a settlement. These notes were not accounted for, nor embraced in that settlement. The guardian had reported the collection of some of them, and had not charged himself with the money so received, for the reason that he was not able to state the precise amount. He had thus expressly reserved and excluded the subject from his annual account; and he continued to leave it out of his final account, we must presume for the same reason. If the residue of the notes were insolvent, and not collectible, he might have so reported them, and obtained a discharge from further accounting for them. But under the circumstances we think he was rightly held responsible for them, at least to the extent of the decree of the court below. In such a case, interest followed as of course upon the allowance of the principal. The court properly disregarded the pretensions of the appellees to have the account stated with ten per cent interest, compounded by means of annual rests. Such a stringent proceeding should be reserved for extreme cases, where the trustee has been guilty of some fraud, or where there is reason to believe that he has made large profits by the use of the trust funds, which he conceals or refuses to disclose.

*Fourthly.* On the settlement of one of the guardian accounts, in May, 1853, the balance in the hands of the guardian was ascertained to be $3,295.25. In carrying this balance into the next account, in 1855, it was *erroneously* stated as being $3,496.59, or $201.34 too much, and this error was continued in the subsequent accounts, the apparent balances being carried forward in the next succeeding account. In the final account, the representatives of the guardian sought to correct this error, and for that purpose they charged the ward with "error in annual settlement of 1855, $240.85," and also with the like sum for *errors* in the annual accounts of 1856 and 1858. We do not perceive how the amount of the first error comes to be stated at $240.85, but counsel on both sides seem to take for granted that such is the true amount. So far as we

are able to see, the amount was the difference between $3,496.59 and $3,295.25, but in this we may be mistaken.   Counsel for appellants insist that this sum ought to be deducted three times, that is, from the accounts of 1855, 1856, and 1858, while the counsel for appellees contend that the error cannot be corrected at all in this proceeding, but only by a bill of review under the statute.   We do not agree, to the extent, with either. Whatever the true amount may be, the whole error will be corrected by charging it to the ward once, as an error occurring in the annual account of 1855.   This produces the same result as if the three accounts were corrected and restated, for it reduces the balance on the account of 1858, by the amount of the error committed, the apparent balance on that account being credited to the ward in the final account.   The error being *palpable*, we think the parties took the proper way to correct it.   Bills of review will only lie to a final order or decree, while in the proceedings for a final settlement, the court may allow *any party* interested, to *surcharge* and *falsify* any *annual* or *partial settlement*.   Rev. Code, 431, article 33. There can be no reason why, on a final settlement, the accountant should not be allowed to correct errors to his prejudice, which are shown by satisfactory proof to exist in his preceding accounts.   We think, therefore, that the court erred in not permitting the appellants to correct the error in the account of 1855, by charging the amount once in the final account.   It cannot, of course, be charged more than once.

The points thus discussed cover all the material questions in the cause.   We may, however, add, in reference to some other matters complained of as erroneous, that in referring a cause to a commissioner to state an account, with interest, it cannot be material to specify the rate of interest in the decree, unless it is intended to charge a different rate from that fixed by law ; and that it cannot be erroneous for the court itself to make the calculations, and to direct the particular amounts to be charged for principal and interest, however unusual and inconvenient such a practice may be.   If the proper amounts are decreed, and upon sound legal principles, it cannot be material by

whom they were ascertained, whether by the judge or by a commissioner. No errors of calculation are pointed out to us.

The decree of the Probate Court will be reversed, and the cause remanded for further proceedings in accordance with this opinion.