PIGOTT v. PIGOTT ET AL.

[73 South. 800, Division A.]

1. ESTOPPEL. *By pleading. Nature of title asserted.*

Where a complainant alleged in a bill not sworn to that he claimed land under a gift from his father, and claimed title exclusive of every one else except his co-plaintiffs, he was not estopped in another suit for the land to dispute that he was a tenant in common with his brother and sister, who were not co-plaintiffs in the first suit.

2. EVIDENCE. *Pleadings. Unsworn pleadings as evidence.*

Admissions and declarations of facts contained in unsworn pleadings are not admissible as evidence against the party pleading, nor is he estopped by an expression of opinion therein as to his legal rights and liabilities.

3. PLEADINGS. *Admissions. Effect.*

Where one claiming land adversely was joined as a plaintiff in a bill by the true owner of the land, but in fact had nothing to do with the suit, and did not read the bill, or authorize the other party's attorney to make claim by the bill, except by adverse possession, he was in no way bound by allegations of the bill to a different effect.

APPEAL from the chancery court of Marion county. HON. R. E. SHEEHY, Chancellor.

Suit by T. A. Pigott and others against W. A. Pigott. From a decree for complainants, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mounger & Ford* and *Lamar Hemington,* for appellant.

*Dale & Rawls* and *Hall & Hall,* for appellees.

SYKES, J., delivered the opinion of the court.

The appellees filed a bill in the chancery court of Marion county, claiming title to an undivided eight-ninths interest in certain lands in possession of appellant, and praying that the claim of appellant to this entire tract of land be canceled as to the above interest, and that they, together with appellant, be declared to be tenants in common of this land. The answer denied all interest of appellees in the land, and denied that the relation of tenants in common ever existed between appellant and appellees as to this land. On final hearing on bill, answer, and proof, a decree was rendered in favor of the appellees, from which decree this appeal is prosecuted.

The material facts in the controversy are as follows, viz: The land in controversy belonged to the state of Mississippi until the year 1883. However, in 1875 and 1877 John Pigott, the father of all the parties to this litigation, purchased the same at a tax collector's sale for unpaid taxes. The land at that time was not subject to taxation; consequently both sales were absolutely void. The wife of John Pigott (Lucy Pigott) owned contiguous lands to those in controversy. Through mistake, John Pigott, acting for his wife, fenced in at different points some small tracts, consisting of a few acres, of the land in controversy

with hers, and put the same in cultivation. John·
Pigott at various times cut cordwood and board trees,
and also some trees for making fence rails, off this
land. The testimony also shows that he cut trees
for the same purposes off of other lands, which be-
longed either to the state or to nonresident owners.
There was some proof, also, which is very vague and
indefinite, that John Pigott had once claimed to own
all the lands in controversy. The testimony of the
same witness, however, is to the effect that at the
same time John Pigott made a statement in which he
said some Northern people were also claiming to own
the land. John Pigott never paid any taxes on the
land during his lifetime. He died in 1891. At that
time he actually owned forty acres of land, and his
wife, Lucy Pigott, who survived him, was the owner
of about two hundred and forty acres. They had
eight children. The testimony shows that, as each
son became of age, John Pigott gave him one hundred
and sixty acres of land. Before his death he had
thus provided for all of his sons, except the youngest,
Theodore. He left no will, but before his death he
administered upon his own estate, and also that of his
wife, and explained to all his children that he had
provided for all of the boys except Theodore, and that
at his (John Pigott's) death his wife and children
must deed to Theodore the home place, consisting of
the two hundred and forty acres. Theodore was to live at
the home place and take care of his mother until her
death. No provision was made at that time for a div-
ision of the personal property. At the time of his
death the testimony shows that he was making no
claim of ownership of the land here in controversy.
Neither did he in any way attempt to divide this
along with the other real estate. The testimony of
his wife, who seems to know more about it than any
one else, was to the effect that he had long since
abandoned any claim whatever to this land. At the

time of his death none of his children knew anything about his claim to this land, neither did they make any claim to it. Theodore lived with his mother until 1893, at which time, after a family conference, it was decided that he should take the land belonging to W. A. Pigott, the appellant in this case, and that W. A. Pigott take that meant for Theodore. This intention was executed by the appellant's deeding to Theodore his one hundred and sixty acres of land, and by the other children and the mother all deeding to the appellant the land intended for Theodore. The appellant then went into possession of the land deeded to him, and shortly thereafter he began to attempt to exercise certain acts of ownership over the land in controversy.

In 1883 the state by patent sold these lands; and in 1907 the record title to same was held by some parties by the name of Cheeseboro. At this time these people began to investigate their ownership of the land, and found the appellant claiming to be the owner of it. The only testimony in the record about this claim of ownership is that of the appellant himself. He testified that he told the agent of the Cheeseboros that he claimed the land, because he had been in the adverse possession of same since 1893, or a period of fourteen years. A compromise was then entered into between the appellant and the Cheeseboros, a part of which was the filing of a friendly suit in chancery, in which the appellant and the Cheeseboros were complainants, and unknown claimants of the land were made defendants. This bill was not signed by the appellant. There was an allegation in the bill that John Pigott went into possession of the land, and occupied it for about fifteen years before his death, and that the appellant, W. A. Pigott, under gift of his father, continued in possession of the land until the filing of the bill, claiming it adversely and exclusively and against all persons. In the compromise with

the Cheeseboros the appellant deeded them the timber on certain lands, and they in turn deeded all of the land to him. It is claimed by the appellees that in making this compromise settlement with the Cheesebors, who were nonresidents, W. A. Piggott used as an asset the void tax deeds to his father, and also claimed that his father had had possession of the land; that without this claim through his father he could not have made his settlement, and that this claim could only have been made as a tenant in common of the appellees, and that a constructive trust resulted therefrom, and that the settlement or compromise made by him was in law made for himself and these appellees as his tenants in common. From 1883 until 1907 the taxes on these lands were paid by the Cheeseboros and their immediate and remote vendors. After the compromise in 1907, and until the filing of this suit, the taxes on these lands were paid by the appellant. The appellant has also made valuable improvements on the lands in controversy. The uncontradicted testimony of the appellant is that he never read the bill filed in the above-mentioned suit until the present suit was brought; that he did not authorize the attorney of the Cheeseboros, who really filed the bill, to state in said bill that he made any claim to the land by virtue of any tax deeds, or claimed it in any way through his father; but, on the contrary, that he claimed on account of his adverse possession of same.

The appellee claims that the appellant in this case is bound by the allegations in the bill filed by him and the Cheeseboros, and that by the allegations in that bill he and these appellees are tenants in common. The appellees are mistaken in both of these contentions. Under the allegations of that bill, the appellant claimed under gift from his father, and claimed title exclusive of every one else except the Cheeseboros. He is in no way bound by those allegations, and no estoppel whatever arises therefrom. *Crump* v. *Gerock,* 40 Miss.

765; *Co-operative Loan association* v. *Leflore,* 53 Miss.
1; *Meyer* v. *Blakemore,* 54 Miss. 570.   The testimony
in this case really shows that the Cheeseboros were
the owners of the land at the time they made the com-
promise which vested the title in this appellant.   In
1893, when the appellant took possession of the land
deeded to him, the testimony in the case conclusively
shows that all of the land owned both by the father
and the mother of the parties litigant in this case
had been divided.   The testimony further shows that
all claim to the land in controversy by either John
Pigott or any of his family had long since been aban-
doned.   There were no such acts of ownership over
exercised over this land by John Pigott as would have
ripened into a good title by adverse possession.   *Mc-
Caughn* v. *Young,* 85 Miss. 277, 37 So. 839; *Leaven-
worth* v. *Reeves,* 106 Miss. 722, 64 So. 660.

The decree of the lower court is therefore reversed,
and the bill dismissed.

*Reversed and dismissed.*