## KYLE *vs.* BARNETT.

1. Where a guardian invests the funds of his ward in a concern, whose operations are based partly on cash and partly on credit, he is only chargeable with that portion of the profits, if it can be ascertained, which shall accrue on the cash investment.

2. A guardian, who employs his son to take charge of a business in which he has invested the funds of his ward, under an agreement entered into in good faith to allow him for his services one half the net profits after paying legal interest on the investment, the compensation not appearing unreasonable, will not be held responsible for that portion of the profits which may be received by the son.

3. A guardian is chargeable with interest on the profits, derived from funds of his ward invested in a mercantile concern from the time they are received, and, after the dissolution of the concern, on the capital invested, from the time he has received or might with due diligence have received it.

4. Where the guardian has made profits by the employment of the funds of the ward, the latter may elect to take the profits or charge him with interest, but is not entitled to both.

Error to the Chancery Court of Russell. Tried before the Hon. W. W. Mason.

BELSER & HARRIS, for plaintiff in error:

1. The defendant is chargeable with interest on the remaining portion of the capital stock created by the trust fund, and also with simple if not compound interest on the dividends which he has received, from the date of their reception.—Clarkson v. Depeyster, 1 Hop. Ch. 424; Garness et al. v. Gardner's Adm'r, 1 Edw. Ch. 128; Myers v. Myers, 2 McCord's Ch. 266; Peyton v. Smith, 2 Dev. & Batt. Eq. 339; Depeyster v. Clarke, 2 Wend. 77; Diffenderfer v. Winder, 3 Gill & Johns. 311; Whittedge v. Calles, 2 J. J. Mar. 404.

2. It is not an answer to the foregoing positions, that the defendant mingled his own property with the complainant's while he was his ward, even if such in this case were the fact. A person mixing the estate of another with his own may sometimes subject himself to the loss of both.—Docker v. Somes, 2 Mylne & K. 665; Myers v. Myers, 2 McCord's Ch. 265-6; DeBerone v. Sanford, 1 Hoff. 192; Ray's Ex'rs v McCulloch, Cam. & Nor. 492-7; 1 Story's Eq. Juris. 268, 623, and cases there cited.

3. The renunciation of the trust by the defendant and the contract between him and his son after the adventure cannot change complainant's rights. The latter was no party to the arrangement, and he is entitled to the accretions on his funds invested, after paying reasonable compensation and necessary expenses.—Wilkinson v. Stafford, 1 Vesey jr. 32; Lee v. Fox, 6 Dana, 176; Chapin v. Weed, 1 Clark's Ch. 464; Peyton v. Smith, 2 Dev. & Batt. Eq. 346; Chaplin v. Givens, Rice's Eq. 132; Bank of Virginia v. Craig, 6 Leigh, 399; Sweet v. Jacocks, 6 Paige, 355; Attorney Gen'l v. Mayor of Nor. 2 Mylne & Craig, 406; McMillen v. Scott, 1 Mon. 151; Rogers v. Crudger, 7 Johns. 557; Roberts v. Wilson, 2 Bibb, 597.

4. The profits cannot be divided according to the chancellor's idea of the cash and credit of the firm. Such a rule of compu-

tation could scarcely be carried out in practice, and is against precedent.—Peyton v. Smith, 2 Dev. & Batt. Eq. 339; Myers v. Myers, 2 McCord's Ch. 266.

HEYDENFELDT, for the defendant.

CHILTON, J.—The plaintiff in error, who was also the complainant below, filed his bill in the Chancery Court of Russell county against the defendant, Barnett, who was his guardian, for an account of certain funds of the complainant alleged to have come into the hands of the defendant, and for the profits, which he charges accrued upon the investment of a large proportion of said funds in the mercantile concern of Kyle & Barnett, of which said firm said guardian was a member.

It clearly appears from the record that at several times, between the months of October 1838, and March 1841, there was invested in said concern, of monies belonging to the complainant, the sum of five thousand six hundred and seventy-seven dollars. It also appears that within said periods the defendant invested some of his individual funds in said concern, and that fair profits had been derived, and which were several times ascertained and apportioned between the partners. The concern did not however deal exclusively on its cash, but the goods were purchased partly on credit. It further appears that pending the operations of the concern, the defendant agreed with his son, John N. Barnett, to let him have one half of the profits which should accrue to the defendant, less the lawful interest upon the cash capital invested. The defendant also received other sums of money belonging to his ward derived from the hire of slaves, and also boarded and educated the plaintiff. The chancellor decreed an account to be taken of the profits, under the following directions: 1. That the register ascertain and report the amount of cash invested by the defendant in the mercantile establishment of Kyle & Barnett, and what part of said business was done on cash and what on credit, and that he separate and report the profits on the cash and the profits on the credit, allowing the same rate of profit on each. 2d. That he report the amount of interest on the cash invested by the defendant during the time it remained in said concern, and what part of said cash capital was the money of the complainant, and that he deduct said amount of interest from the profits made on said

cash capital. 3d. That he report the amount of the balance of said profits of said cash capital, after deducting therefrom said interest; then to allow one half of said remainder to John N. Barnett for his share. 4th. That he ascertain and report the amount of said balance of said profits accruing upon the cash capital, and apportion the same between the complainant and the defendant according to the amounts by them invested. 5th. That he report the amount of interest which accrued upon the money of the complainant while it was invested in said mercantile establishment. 6th. That he ascertain and report the amount due the complainant from the defendant, charging the latter with said 8 per cent. and with the same rate per cent. for all money of the complainant which came to his hands, and also with the nett profits on said money of complainant invested by the defendant in merchandize. 7th. That he report the sums paid out for the complainant and for the sustenance of the negroes that could not be hired, and the times of such payments, and that said payments be deducted first from the hire of the negroes for the years in which they were respectively made, and if the hire be insufficient to meet said payments, the balance due said defendant, after exhausting said hire, to be deducted from the said interest due on the said money of complainant invested in said mercantile concern, and if that should be found insufficient, then that the remainder be deducted from the combined capital and profits of the money of the complainant, ascertained as aforesaid. These directions form the basis of his decree, from which the complainant sued out his writ of error to this court, and by the consent of counsel the defendant below is also allowed to assign errors as upon his own writ.

1. On the part of the complainant it is insisted, that he should be entitled to the profits made upon the credit as well as upon the cash of the concern, in proportion to the amount of his funds invested. In this we do not concur. There is nothing in the record from which it may be infered that the credit which was obtained was based upon the capital thus employed, even if such fact was material to this inquiry. On the contrary, it is pretty satisfactorily shown that the parties could have obtained it irrespective of this fund. Credit, in one sense, is itself capital, and perhaps is more frequently based upon the fidelity and punctuality of the party in discharging his engagements, and the effi-

ciency and industry which he exhibits in the management of his affairs, than upon any actual monied capital he may possess.—For the debts thus contracted the ward was in no wise responsible, and as it cannot be assumed that the credit was obtained in virtue of the investment of the ward's funds, and as the record shows what portion of the business was done upon cash and what upon credit, thus enabling the court to apportion the profits between them, we think the chancellor properly decreed a separation of the profits, and limited the proportion due the complainant to the amount accruing upon his funds.

2. But it is further contended for the complainant, that the guardian having invested his funds in the mercantile establishment of Kyle & Barnett, he should be entitled to the profits after allowing reasonable expenses, and that his rights should not be affected by the arrangement made between the guardian and John N. Barnett, whereby the latter was to receive for his personal attention to the business one half the guardian's share of the profits, after deducting interest upon the cash capital invested. Now we are not prepared to hold that the guardian, after investing the ward's funds, could defeat his right to the profits by advancing his son or making a donation of the profits to him.—The record before us, however, does not present such a case. It does not show that the arrangement made by the guardian with John N. Barnett was unreasonable, or that it might not well have been entered into with any other individual. It secured to the guardian interest at the rate of eight per cent. upon the cash invested and one half the remaining profits. Whether this provision for the services of the son should turn out to be more or less than a just compensation was a question which from the nature of the case must then have been doubtful, depending as it did upon the success or failure of the enterprise. In view of the facts of the case as they appear in the record, the son having given his personal attention to the business from its commencement up to its close, without other compensation, and having, it may be, mainly by his skill and efficiency, been enabled to swell the profits to a considerable sum beyond what may have been contemplated by the parties at the time, we do not feel authorised in holding that he is not justly entitled to the compensation he contracted to receive, nor will we charge the guardian with more of the profits than has come into his hands,

since we are satisfied that the agreement by which he parted with a portion of them was just, and fairly entered into. This conclusion does not militate against the authorities cited by the counsel for the complainant. These merely go to the doctrine so generally recognised by courts of equity, that a trustee shall not be permitted to make any profit to himself in any of the concerns of the trust; or that, having engaged the trust property in an adventure profitable to the *cestui que trust*, he shall not be permitted to renounce it for the trust and declare it to be for his own account.

3. In Bryant v. Craig, 12 Ala. Rep. 354, it was held that a guardian who fails to make annual returns of his accounts is liable for interest on the funds in hand, but is not liable to be charged compound interest, unless he is guilty of such gross neglect as is evidence of fraud. The same case further decides that in settling the account of a guardian the court should charge him with interest on all money of the ward in his hands from the time of its receipt, and allow him interest on all disbursements from the time they were made, the interest due from the guardian to extinguish *pro tanto*, or in full as the case may be, the expenditure of the ward. In the record before us, the guardian from time to time received the profits which accrued upon the ward's money invested in the business of merchandize. The receipt from that source is the same, so far as his liability is concerned, as if he had received the same amounts from any other source, and in our opinion he should be chargeable with simple interest upon these dividends from the time of their receipt by him. So also should he be charged with interest upon the amount of the capital stock which belonged to the ward and remained in the concern at the time of the dissolution, calculating the interest from the time said guardian received or might have received it by the use of due diligence. The failure of the chancellor to decree interest upon the dividends and the capital on hand at the dissolution was an error against the complainant below. On the other hand, the complainant is not entitled to recover interest on the funds which were invested in the concern of Kyle & Barnett pending the operation of the concern, but he is entitled to all the nett profits which accrued thereupon to the guardian, both under his partnership with Kyle and under the subsequent arrangement with his son, John D. Barnett.

The eight per cent. per annum, which the latter agreed to pay upon the cash capital, of course forms a portion of these profits. So far then as the decree of the chancellor charges the guardian with interest upon the cash capital during the time it was employed by the guardian in the concern of: Kyle & Barnett, in addition to the profits which accrued thereon, it is erroneous to the prejudice of the defendant below. The rule applicable to such cases is this: If the trustee makes profits by employing the fund in trade, the *cestui que trust* may elect to take the profits, or the interest upon his funds. He cannot have both.— 2 Story's Eq. Jurisp. § 1262, *et seq.*

The principles above laid down will be sufficient to a correct determination of the cause in the court below.

Let the decree be reversed and the cause remanded, and let each party be taxed with his own cost in this court.