THOMAS F. JOHNSON et ux. *v.* HARVEY MILLER.

1. WILL: CONSTRUCTION OF: WIDOW'S STATUTORY PORTION.—M, by his will, gave
   to his widow $20,000, and the remainder of his estate to his then only child, A;
   after the birth of his child L, he directed, by a codicil to his will, that she
   should have one-fourth of the net profits of his estate until she arrived at six-
   teen years of age, and after that time should share equally with A. The widow
   renounced the will, and claimed her statutory portion, being one-third of the
   estate. Held, that the youngest child, L, was entitled, whilst under sixteen·
   years of age, to one-fourth of the net profits of the whole estate, inclusive of
   the widow's portion, or to three-eighths of the remainder, after the widow's
   share had been deducted.
2. GUARDIAN AND WARD: INTEREST.—A guardian, who has not been directed to
   loan his ward's money, nor consented to take it on interest, is not liable to pay
   interest on the income of his ward, unless he has failed to account for the pro-
   fits, and thereby prevented a profitable disposition of such income. See *Rey-
   nolds* v. *Walker*, 29 Miss. R. 252.
3. SAME. — Where a guardian, in his annual accounts, charges himself with
   compound interest on his ward's money remaining in his hands, it is an admis-
   sion that he is chargeable with interest, and that he has used the money for his
   individual profit, and if no sufficient reason appear in record to the contrary,
   he should not be relieved of the charge as made, and held accountable only for
   simple interest.
4. SAME: GUARDIAN CANNOT MAINTAIN BILL OF REVIEW.—The decree rendered
   by the Probate Court, allowing the annual account of a guardian, is final as to
   him in that court; the ward may reopen the account by bill of review, but no
   such right is vested in the guardian.

In error from the Probate Court of Washington county. Hon.
R. L. Dixon, judge.

John C. Miller died in the State of Kentucky, in the year 1840,
leaving a widow, Jane Miller, and two children, viz., Agnes Miller,
who, in the year 1846, intermarried with one John F. Warren, and
Laura, who, in 1854, intermarried with Thomas F. Johnson. On
the 14th of September, A. D. 1836, John C. Miller made his last
will and testament, by which he bequeathed the sum of $20,000 to
his widow, Jane, to be paid in cash, or in property at a fair valua-
tion, as she might elect; and he gave "the remainder of his estate
to his daughter, Agnes F. Miller, during her lifetime, and after her

death to her children," and if she should die without issue, he then directed his estate so bequeathed, to go to his brother, Harvey Miller. He appointed Harvey Miller his executor, and directed that he should be allowed the sum of $10,000 for his services as such, until his daughter Agnes, should arrive at full age, or marry.

On the 2d day of May, A. D. 1840, he made a codicil to his will, by which, after reciting that his daughter Laura had been born since the execution of his will, he provided as follows: "I give to my daughter Laura, the one-fourth part of the net proceeds or profits of my estate, after paying my debts, until she arrives at the age of sixteen years; and after that to hold an equal portion of my estate, real and personal, with my daughter Agnes; and to hold it under the same instructions and regulations, in every way, as prescribed for Agnes." He also appointed Harvey Miller and George W. Ward guardians for his two daughters, and directed that his plantation in Mississippi be kept up, and continued under the control of the former.

Mrs. Jane Miller, the widow, renounced the provisions made for her in the will, and elected to take dower, which amounted to one-third absolutely of the personalty, and one-third of the realty for life.

Harvey Miller qualified as executor in 1840, and as guardian in 1843, and acted as manager of the plantation until the year ——, when he surrendered its control to John F. Warren, the husband of Agnes. No division of the estate was made between the widow and children, but the same remained in common.

In April, 1843, it appeared by an account then stated, that all the debts of the testator had been then paid, except the sum of $9682 74, due to Harvey Miller, as a part of the sum of $10,000, directed to be paid to him by the will, for his services as executor. In his accounts after 1843, Harvey Miller accounted with the widow for one-third of the profits of the estate, and with Agnes for three-sixths, and with Laura for one-sixth, or one-fourth of the two-thirds remaining after deducting the share due to the widow.

In November, A. D. 1854, Harvey Miller applied to the Probate Court of Washington, to surrender his letters of guardianship for Laura, who had then married, and to make a final settlement of his accounts, and at the same he rendered his final account as her

guardian, stated on the principles above-mentioned. Johnson and wife, in answer to the citation, objected to the account as stated, and insisted that it should be reopened, and that the guardian be charged, for their benefit, with one-fourth of the profits of the whole estate, up to the period when said Laura arrived at sixteen years of age, and afterwards with one-third. During the pendency of these proceedings, Miller applied to the court to file an amended final account, so as to be relieved from a large sum which he had charged against himself, at compound interest, in his annual accounts, which application the court granted. On the final hearing, the court decreed, that Miller was only accountable to Johnson and wife for one-sixth of the net profits of the estate, until Mrs. Johnson arrived at the age of sixteen, and further, that Miller was not liable for the compound interest with which he had charged himself in his annual accounts. From this decree Johnson and wife prosecuted this writ of error.

*Yerger & Rucks*, for plaintiff in error.

*Freeman & Dixon*, for defendant in error.

SMITH, C. J., delivered the opinion of the court.

This writ of error is prosecuted to revise a decree of the Court of Probates of Washington county, rendered in the final settlement of the guardianship account of the defendant in error.

The principal question, in the record, arises upon the construction of the will of John C. Miller, deceased.

It appears that the testator died in Kentucky, in 1840, leaving a widow, Mrs. Jane Miller, and two daughters, Agnes, who in 1846 intermarried with John F. Warren, and Laura, who was married to the plaintiff in error, Thomas F. Johnson, in 1854. By his will, bearing date the 14th of September, 1836, the testator bequeathed to his wife $20,000, to be paid in part in certain specified property, or entirely in cash, at her election; "and the remainder of his estate to his daughter Agnes for life, and after her death to her children." He appointed the defendant in error his executor, and "allowed him $10,000 for his attention, until Agnes should arrive at age, or should marry."

By a codicil to this will, made in 1840, the testator mentions the birth of his daughter Laura, and declares as follows : " I give to my daughter Laura, one-fourth part of the net proceeds or profit of my estate, after paying my just debts, until she arrives at the age of sixteen years; and after that to hold an equal portion of my estate, real and personal, with my daughter Agnes ; and to hold it under the same instructions and regulations, in every way, as pre-scribed for Agnes." By this codicil, defendant in error and George Ward were appointed guardians of Agnes and Laura; and his further wish was declared, that " his planting interest should be continued under the control" of the former.

Mrs. Miller renounced all claim to the bequest in her favor made in the will, and elected to take a child's part, which was, there being two children, one-third of the estate.

The defendant in error qualified as executor in 1843, and acted as manager of the plantation; and by the 25th of April, 1843, had paid off all the debts of the estate, except $9682 74 of the $10,000 given to him by the testator, as compensation for his ad-ministration and management of the estate. He acted as guardian for the testator's two children from 1843; of Agnes until 1846, and of Laura until her marriage with Johnson, in 1854.

We presume that there had been no distribution of the estate between the widow and children, but that the whole of the testator's slave property was kept and worked together, on the plantation in Washington county. The defendant in error, in his annual accounts against the wards, accounted with Agnes for one-half of the whole net proceeds of the estate, and with Laura for one-sixth. This was done, under the sanction of the judge of Probates, evidently upon the supposition, that as the widow's statutory portion was one-third of the whole estate, Laura was entitled to but one-fourth of the remainder, which was equal to one-sixth of the whole.

This construction is erroneous. The codicil, in express words, gives to Laura one-fourth of the net proceeds of the estate after the payment of the debts.

The intention of the testator, expressed in these words, appears too plain to admit of misapprehension. The bequest, in reference to the portion of the net proceeds, is as definite and certain as a specific legacy is, in regard to the article bequeathed. It is not

contingent or conditional: it is positive and absolute, and hence must prevail over the dispositions of the estate made previously in the will. To ascertain the amount of the legacy, or in other words, the proportion of the net proceeds of the estate, which was given by the codicil, we must ascertain what was the whole amount of the testator's estate after payment of his debts. And to the inquiry, what was that estate? but one answer can be given. It was the whole of this property, real and personal, of which he died seised and possessed, less the amount of his debts. Certainly the widow's portion was not the less a part of his estate, because she was entitled to it by law, and not by the provisions of the will. Her statutory portion, if she be not regarded strictly in the light of a distributee, entitled as next of kin to the testator, was a charge upon his estate; and it was simply because it was his estate, that she was entitled to it, either under the statute securing the widow's portion, or under the statute of distributions. It might with equal propriety be asserted, absurd as the proposition would be, that the property, given by the will to Agnes, did not, when the testator died, constitute a part of his estate! It follows, evidently, that the youngest daughter, Laura, was entitled, by the codicil, to one-fourth of the whole net proceeds of the estate possessed by the testator when he died.

The defendant in error acted as executor of the will, manager of the estate, after the testator's death, and as guardian of his two daughters. He paid over to the widow one-third of the net annual proceeds; and in his settlements as guardian, he accounted to Agnes for three-sixths, and to Laura for one-sixth of the net annual proceeds. Having acted in the threefold capacity of executor, manager, and guardian, according to the construction which we put upon the will and codicil, it is clear that he was bound to account to Laura for one-fourth of the whole net proceeds of the estate, from the time he assumed to act as her guardian until she arrived at the age of sixteen years. But as he accounted to her for but one-sixth of the proceeds, it is equally clear that he should have been held to account further for the difference between one-sixth and one-fourth of the same. It follows, hence, that the court erred in allowing the final guardianship-account of the defendant in error.

It appears, that upon the application of the defendant in error, he was permitted by the court to restate and correct his guardianship accounts, thereby relieving himself from certain sums charged as compound interest in his said accounts. This procedure is objected to as an additional ground for reversing the judgment.

The general rule of this court, in regard to the liability of guardians for interest upon the money of their wards is, that a guardian is not chargeable with interest upon the money of his ward remaining in his hands, unless he is directed to loan the money or to take it on interest. *Reynolds* v. *Walker*, 29 Miss. Rep. 250. But the rule is equally clear, that where the guardian has failed to account for the profits or income of his ward's estate, and thereby prevented a profitable disposition of such income, he should be held accountable for interest on such income. And it is held, that in such cases, the court may either presume that the guardian has used his ward's money for his individual profit, or that he has consented to take it on interest. Ib.

In this case the record does not show that defendant in error was ordered to lend his ward's money, or that he consented to take it on interest. But in his account he has charged himself with compound interest on the amount of the ward's money in his hands. This act of the defendant in error, is evidence that he thought that he was legally chargeable with interest, and is doubtless sufficient to have authorized the presumption that the money was used for his individual profit. And assuming that such was the fact, there is no sufficient reason apparent of record why he should not be charged with compound interest.

The annual settlements of the guardianship-accounts were made under the sanction of a court of competent jurisdiction. Hence its decrees, made in the premises, were conclusive against all of the parties, unless set aside by due course of procedure. The law gave to the ward, in this case, the right by bill of review, to open the settlement of his accounts, rendered by the guardian; and to surcharge and falsify the same, whether rendered at an annual or final settlement. Hutch. Dig. 728, section 3. But for very obvious reasons, no such right was vested in the guardian. The decree rendered by the Court of Probates, allowing the account presented by a guardian, is as to him, final in that court. For this,

and the reason above assigned, the court erred in allowing the settlement of the guardianship-accounts of the defendant in error to be set aside, and in ordering the accounts, at his instance, to be restated.

We consequently reverse the decree, and remand the cause for further proceedings, in accordance with the principles herein laid down.