Frost v. Winston.

JAMES E. FROST, Appellant, v. JOHN H. WINSTON, Respondent.

*Guardian— Ward.*—If a guardian voluntarily disburse on account of his ward a sum greater than the ward's estate, he has no recourse upon the ward for the overplus unless there be a special promise to pay it. (Wyatt v. Woods, 31 Mo. 351, affirmed.)

*Guardian—Accounts—Interest.*—Where a guardian had moneys of his ward, and had lent or could have lent the same at the highest legal rate of interest, when called to account he will be properly charged with that rate, with annual rests, but should be allowed a reasonable commission as the guarantor of payment.

## Appeal from Weston Court of Common Pleas.

*Vories, Spratt,* and *Merryman,* for appellant.

I. The eighth error of the court is the most prominent one in the case. It is in relation to the computation of interest. The defendant excepted to the report of the commissioner because the commissioner compounded the interest annually at the rate of six per cent.; and the court sustained the exception and referred the case back, with directions to compute at simple interest and not compound it. The plaintiff contended that it should be compounded annually; and the question for the court to decide is whether the interest should be compounded or not, and whether it shall be computed according to the legal rates of interest in this State, or according to the laws of North Carolina. The petition charges that defendant used the money from the time he came to the State, and he lent it, or could have lent it, at the rate of ten per cent., compounded annually. The answer admits he used it and lent part of it at ten per cent. The evidence shows that, from 1838 up to the time of giving their testimony, money was worth ten per cent., compounded annually, and could have been loaned all the time at that rate. All these witnesses managed money, and they say they had no difficulty in loaning at ten per cent., compounded annually. It may be contended that as defendant received his appointment as guardian in the State of North Carolina, he is not governed by the laws of Missouri, and is only bound by the rate of interest in that

State, which is six per cent., compounded annually. It may further be argued that plaintiff cannot sue here in our courts. As to that, we refer the court to the private acts of Legislature passed in 1855, art. 5, § 5 & 6, pp. 96 & 97.

Independent of that act, our courts have jurisdiction. This doctrine is well settled in Story's Conflict of Laws. (See § 506, t. p. 417.) Story and Kent both say that it is the right of the guardian to change the domicil of the ward— that he may do so though it change the right of succession. If defendant exercised this right and removed the plaintiff to Missouri with his property—and in so doing, as Story says, the right of succession and the laws of descent of this State govern his property—certainly he has a right to appeal to the laws and courts here to protect him in his property. This doctrine has been settled in Ohio. (See 8 Ohio, 227.) In this case the guardian was appointed in Pennsylvania, and received the ward's property and removed to the State of Ohio. The court decided the guardian was bound to account under the laws of Ohio, and the court say it is the doctrine in England. (See 1 Pars. Sel. Cas. in Eq. 411; 18 Martin, 69.)

The pleadings and evidence show that defendant received the effects as testamentary guardian. If so, a Court of Chancery has jurisdiction wherever he may go with the property.

Defendant, the moment he received the money of plaintiff, received it as the ward's money, and he brought it to Missouri. And what was his duty at common law? It was to loan it at the highest rate of interest; and the laws of Missouri compelled him to make annual settlements, and further directs the court to charge them with the interest annually. The statutes of Missouri direct and authorize the guardian to loan the money and take notes binding the obligors to pay the interest annually, and, if not paid at the end of the year, the interest to bear the same rate of interest as the principal. The court in this case only charges defendant with simple interest. If defendant had made his settlements annually, the court would have charged him with the interest in

Frost v. Winston.

each settlement. It was his duty to have made his settlements; and by his failure the court should not relieve him from his liability by his refusal to do his duty. The defendant further states in his answer, that year after year he went into the Probate Court of Platte county and had the identical accounts proven up and allowed against plaintiff, and he pleads them by way of offset in this suit. If the Court of Probate had jurisdiction to allow the accounts of defendant's offset, it had jurisdiction to settle the estate as guardian. In Missouri, the rate of interest from 1835 to 1847 was ten per cent. (R. C. 1835, p. 333, § 2, and p. 295, § 9 & 10; R. C. 1845, p. 613, § 1 & 2—also, p. 551, § 23; 1 Johns. Chy. 620–628; Wright v. Wright, 2 McCord, 203; 4 Johns. Chy. 303; 4 Vesey, 620; 2 Kent's Com. 237; R. C. 1845, p. 551.)

There is a difference in administrators and executors, and guardians, and the distinction is drawn in Story and the Ohio case above cited.

II. The court, in referring the case back to the commissioner, directs him to allow defendant a commission of five per cent. on the whole amount. He failed to make any settlement, was derelict in duty, put himself to no trouble, and has forfeited all claim for his services, and has performed none, and therefore he is entitled to no remuneration. (2 L. Cas. in Eq., part 1, p. 344; Boyd v. Boyd, 2 Grat. 125; 2 L. Cas. in Eq., part 1, p. 337.) In the same volume, part 1, the rule in North Carolina is stated, p. 339; Maryland, the rule is also stated, p. 333. Pennsylvania, the same rule. (2 L. Cas. in Eq., part 1, p. 323.)

III. The court below set aside the first report of the referee, and referred the case back to him by the following order and with the following instructions:

"It is therefore ordered and decreed that the case be remanded to the referee, with instructions to charge the defendant with the highest rate of simple interest allowed by the statute law of North Carolina while the money remained there, and after the removal of it here to charge the highest rate of interest allowed by the laws of Missouri (simple in-

terest), and allow the defendant five per cent. commission upon the whole amount at the time of settlement with the plaintiff, and the actual expenses incurred in reducing the property of plaintiff to possession; also the necessary expenses in taking care of the person of the defendant during his minority."

This order is erroneous, because:

*a.* The defendant should have been compelled to make annual rests, and compound the interest annually. (1 Johns. Chy. 620–628.)

*b.* The order directed that the defendant should be allowed a commission of five per cent. not only upon the money received by him as guardian, but also on the interest on said amount up to the time of taking the account—this interest never having been paid or accounted for in any manner whatever, so as to make it of any profit to his ward. And in fact he was not even entitled to any commission, inasmuch as he had used the money as his own in common with his other moneys and property. (See cases elsewhere referred to.)

The referee, in taking the account under these instructions given by the court, adopted a method of computation which was not only in violation of all law, but was really an outrage on rights of the plaintiff; *that is to say*, he charged the defendant only simple interest on the amount of money actually received by him, so as to deprive the ward of any benefit from the interest accruing on his money for over twenty years. And then he allowed the defendant interest on all amounts · paid for the benefit of the ward from the time that the same was paid up to the time of taking the account. To illustrate this mode of computation, it will be seen that in July, 1840, the interest then due on the money in the hands of defendant was over two thousand dollars. At this time defendant paid for the benefit of the ward sixteen dollars. The referee allowed the defendant twenty-four dollars and ninety-four cents interest on this payment, making forty dollars and ninety-four cents, for which he gave defendant credit, when the two thousand dollars' interest due plaintiff at the time of said

payment never increased in amount one cent; and the same principle of calculation was adopted as to all other payments. It needs neither argument nor a reference to authorities to show the injustice and absurdity of such a computation.

The guardian, as this case stands, has run the ward in debt, after exhausting his money, in the sum of over three thousand dollars, which is not permitted by the law. (See the case of Wyatt, executor of Galaway, v. Wood & wife, 31 Mo. 351.)

IV. The offset of defendant next presents itself—the nineteenth exception of plaintiff to the first report of the commissioner. The defendant's items in his offset are composed of his accounts referred to in his answer, and Nos. 1, 2, 3, and 4, which have been allowed in the Probate Court of Platte county in favor of defendant and against plaintiff, in the guardianship by defendant of plaintiff in the estate of Joseph Winston. Defendant cannot take the items which have been reduced to judgment and plead them as an offset, but he may take the judgment and ask that they may be set off in this case, if defendant owes plaintiff nothing in the other estate.

The commissioner refused to permit plaintiff to show that defendant owed him in the other estate, and defendant does not pretend to show that he has finally settled the other estate, nor does he charge the fact in his answer; but he can not plead the items again, but must rely on his judgments in the Probate Court. (21 Mo. 287 & 91; Smiley v. Dewy, 17 Ohio, 159.)

The partial transcripts of defendant were improperly admitted as evidence.

The defendant is not entitled to five per cent. commission, nor is he entitled to any commission.

BATES, Judge, delivered the opinion of the court.

In 1836, James B. Frost died in North Carolina, having made his will, whereby he appointed the defendant executor thereof, and his widow Louisa and the defendant (who was

brother of the widow) guardians of his two children, of whom the plaintiff is one.

The defendant administered the estate, which was all converted into money. In 1838 the defendant and the widow Frost removed to Missouri, bringing the children with them, and so much of the estate as was then realized, and the remainder was afterward sent to and received by the defendant. Immediately after their arrival in Missouri, William Frost died. The defendant retained the estate and applied portions of it for the benefit of the children, and, when the plaintiff became of age, paid him some considerable sums of money. The plaintiff became of age in 1855, and in 1858 he began this suit, in which he charged that the defendant had received the estate of the plaintiff's father, one half of which belonged to him (the plaintiff), and that the defendant held it as his guardian; and admitted that the defendant had paid him several sums of money, the amount of which he did not know, and asked that the defendant should disclose the same, and that he might have judgment against the defendant for the balance. The defendant answered, and among other things insisted that he had fully paid the plaintiff.

The cause was, by agreement of parties, referred to a commissioner.

The referee having heard the cause, reported to the court an account, in which a statement is made of the receipts and payments by the defendant, the items of which are not disputed. In stating the account, the referee computed interest at the highest rate allowed by law each year upon the sum in the hands of the defendant, and added that interest to the principal, and from that sum deducted the amounts expended during the year for the ward, and also a commission which he allowed the defendant of two per cent. on the amount in his hands at the beginning of the year, and the remainder became the principal for the next year, with which he proceeded in like manner; and so of each year to the end of the account.

The result showed an indebtedness of the plaintiff to the

defendant of five hundred and seventy-five dollars and sixty-one cents.

Both parties excepted to the report, and the court being of opinion that the referee had erred in computing the interest with annual rests and additions of interest to principal, so as to compound the interest, and also in allowing the defendant two per cent. commission annually, remanded the case to the referee, with instructions to compute the interest at simple interest, and to allow the defendant only one commission of five per cent. on the whole amount in his hands.

The referee reported an account stated in obedience to the instructions of the court, the result of which showed an indebtedness of the plaintiff to the defendant of three thousand and seventy-four dollars and seventy-six cents, for which sum the court rendered judgment in favor of the defendant against the plaintiff. This judgment must be reversed. If a guardian voluntarily disburse on account of his ward a sum greater than the ward's estate, he has no recourse upon the ward for the overplus unless there be a special promise to pay it. (Wyatt v. Woods, 31 Mo. 351.)

In remanding the cause, it is proper to state that we are of opinion that the mode of computing the interest adopted by the referee in his first report—that is, charging it at the highest legal rate and compounding it—is the correct one. In so doing, it is proper to allow the defendant a liberal commission, because he is not only charged with the highest interest he could get for the money, but, if he have lent it out, is made a guarantor of payment. The amount allowed appears to be reasonable; but, as it is not in our province to judge of that, we must remand the cause.

At the hearing before the referee, it appeared that in 1850 the defendant had been appointed, in Missouri, guardian of the plaintiff, with a view, apparently, of his managing other property of the plaintiff, but that no such property had come to his hands as such guardian, but accounts against the ward had been allowed in his favor, and that the credits given the defendant by the referee were for the same items allowed the

defendant in the Probate Court, and objection was made to their allowance on that account. The objection was overruled, and, we think, properly. The defendant was guardian of the whole estate of the plaintiff, and not merely of that derived from a particular source, and the allowance was a proper credit to him upon all his indebtedness as guardian.

Judgment reversed and cause remanded. Judges Bay and Dryden concur.