CRUCE, *Executor,* v. CRUCE *et al., Appellants.*

1. **Executors**: INTEREST: STATUTE. Probate courts, under Revised Statutes 1879, section 232, possess the power of courts of equity in relation to the interest to be charged against executors and administrators in favor of the estate, and they being regarded in equity as trustees, the court will follow, as to them, the practice which prevails in equity in charging trustees with interest.

2. **Equity**: ACCOUNTING: INTEREST. While in equity there never was an absolute rule governing the rate of interest, or the liability to pay compound interest, yet the following may be stated as underlying principles with which all rules and orders of accounting should conform as near as the circumstances of the case will permit: 1st, A trustee is accountable for all interest or profits actually received by him from the trust fund, whether used in his private business

or otherwise employed by him. Under no circumstances will he be permitted to retain any benefit or advantage from the trust fund, exept his compensation or commissions. 2nd, He is, at all events, accountable for such interest or profits as he might have obtained by the exercise of reasonable skill and exertion in the management of the fund whenever the character of his trust, or the relation which he holds to the fund requires him to make it productive. In all such cases he is, at least, accountable for such gains and profits, although the actual gains and profits may be less. All orders for periodical rests and for compounding interest should be adopted, not for punishing the delinquent trustee, but for the purpose of attaining the actual or presumed gains, and to make certain that nothing of profit or advantage remains to the trustee, except, perhaps, his commissions or compensation.

3. **Trustee**: ACTUAL GAINS FROM TRUST FUND : BURDEN OF ACCOUNTING FOR: TRUSTEE'S SILENCE. The burden of accounting for the actual gains and profits rests upon the trustee. If he fails or refuses to furnish evidence of them, he invites the rule which shall most nearly approximate his actual gains and leave no advantage or benefit to him by reason of his silence or refusal. When, notwithstanding his failure to disclose his profits, they are in fact known to the court by means of other evidence before it, the order of accounting should be framed with reference to approximating such gains, unless they should be less than a prudent management of the funds should have produced.

4. **Use of Trust Fund by Trustee**: RATE OF INTEREST CHARGEABLE AGAINST HIM. Where a trustee uses in his private business the trust fund, he is *prima facie* liable, at least, for the legal rate of interest for the use of money, that is that rate which the law attributes to contracts in the absence of stipulation on the subject. Where it appears in proof that the higher rate could easily have been obtained, the trustee should be accountable for such higher rate, always, of course, within the rates permitted by law.

5. **The** proper method for calculating interest, upon the accounts of the executor in this case, stated.

*Appeal from Henry Circuit Court.*—HON. F. P. WRIGHT, Judge.

REVERSED.

*M. A. Fyke* for appellant.

The executor should be charged with compound in-

terest, because, by the will, he was appointed testamentary guardian of Agnes and Julius, which appointment he accepted, and continued to act in that capacity until they arrived at their majority. Hinckley's Testamentary Law, § 385, and cases cited; Reeves' Dom. Rel., 467, note; *White v. Parker*, 8 Barb. 48. By Revised Statutes, section 2564, guardians by will are in all things upon the same footing as guardians appointed by the court or chosen by the minor, except the latter shall have no right to choose another guardian, etc. Under Revised Statutes, section 2599, and General Statutes 1865, page 471, section 41, it was the duty of the guardian to have loaned the money of his wards at the highest legal rate, to be paid annually, and if not so paid, to become part of the principal and bear interest at the same rate.

*B. G. Boone* with *John F. Philips* for respondent.

The only material points at issue in this case are: First, whether the court below should have charged the executor with the sum of $3,200 or $4,100 on sale of land to Ming. The court charged the executor with $3,200 on this sale, estimating the land at $5 per acre. The evidence of Cruce, Ming, Salmon, Cock and Holland established, as we think, beyond controversy, that $5 per acre was a full, fair and reasonable value for the land at the time of the sale; and computing interest thereon at ten per cent from date of sale until settlement in 1879, amounts to more than the land was worth at the time of the settlement, and shows that the sale was a beneficial and profitable investment for the appellants. That Cruce, and Ming estimated the land at $5 per acre, is conclusively shown by their testimony. The consideration expressed in a deed is always open to explanation—is never conclusive. *Miller v. McCoy*, 50 Mo. 214; *Fontain v. Boatman's Sav. Ins.*, 57 Mo. 553; *Alltringer v. Capehart*, 68 Mo. 441. Under the evidence on this point, the court below acted correctly in

declining to charge the executor with $4,100, and properly charged him with $3,200. Second, the second point at issue is, the rate of interest to be charged, and the rule of computing it. Under our statute, no specific rate of interest is required. The court shall exercise an equitable control in making executors and administrators account for interest received by them on debts due the estate, and for interest accruing on money belonging to the estate, loaned or otherwise employed by them, and for that purpose may take testimony, etc. *In re Davis*, 62 Mo. 450 ; R. S. 1879, §§ 231, 232; *Madden v. Madden*, 27 Mo. 544; *Hook v. Payne*, 14 Wall. 257. As to whether interest shall be charged at all, or, if charged, at what rate, is wholly within the discretion of the court in the exercise of its equitable jurisdiction of the case. And, unless that equitable discretion be improperly and unjustly exercised, this court, upon review, will not disturb it. It was the duty of the guardian to make annual settlements. R. S., § 2600. G. S., § 42, p. 471. This he failed to do; therefore, we claim that, as a matter of law, the guardian ought to be charged with ten per cent compound interest. It is contended by respondent that he is not testamentary guardian, but is simply executor, and should be held to account upon the same basis as an administrator. Even if this is so, according to the rules established by this court, he ought to be charged ten per cent compound interest. 1st, Because he has not made annual settlements of his accounts. 2nd, Because the testimony in the case clearly shows that the funds were used by respondent in his own business, and that he kept no separate account of his own money and that belonging to the estate. According to his own statement, he used the money as his own trading in hogs, and sold or traded a large body of land for a stock of dry goods, clearly bringing himself within the rule laid down by this court in a number of cases. *In the matter of the estate of Camp* 74 Mo. 192, and 6 Mo. Appeals, 563; *Williams v. Pettigrew*, 62 Mo. 460 ; *Barney v. Saunders*, 16 How.

Cruce v. Cruce.

542; *Hook v. Payne*, 14 Wall, 252; 1 Am. Ld. Cases 523, 535; *Moore v. Beauchamp*, 5 Dana, 77; *Comeggs v. State*, 10 Gill & J. 186. 3rd, The testimony clearly shows that the respondent could have loaned the funds in his hands at ten per cent compound interest.

MARTIN, C.—This suit originated in the probate court of Henry county and commenced with certain exceptions taken by an executor to a final settlement adjuged against him by that court, which made him a debtor in the sum of $10,940.12. On appeal to the circuit court, the balance against him was reduced to $5,291.73, from which action of the court the heirs have appealed.

It appears from the evidence that Columbus E. Cruce died testate in December, 1860, designating in his will J. M. Cruce, his brother, as executor of his estate. The testator left two children of tender years, who have since grown up and are the appellants in this case. Agnes became twenty-one in 1874, and Julius in 1878. His will provided that the whole of his property, real and personal, should remain under the control and management of the executor as completely as it was under his own, until his children became of age. He was vested with full power to sell or dispose of any of the property, as he might deem best for the interest of the devisees, who were the two children. He was specially requested to take control and attend to the raising and education of the children.

Shortly after the executor took charge of the property, the war broke out, and he felt compelled to leave his home in Henry county and go to St. Louis. Owing to the disturbed condition of the country, he made no collections until the troubles abated. The courts in Henry county were suspended until 1864. His first annual settlement was made on the 8th of June, 1864. He made six settlements at irregular intervals, and exhibited his seventh and final settlement on the 21st of May, 1878, which, after exceptions and findings by the court, was settled in due form

on the 20th of February, 1879, after the heirs had attained their majority. Upon appeal to the circuit court, another settlement was adjudged as his final settlement, which found a balance in his hands of $5,291.73. This was entered at the April adjourned term, 1879, and is the one appealed from by the heirs. They except to the settlement for two reasons; 1st, that the executor ought to have been charged with compound interest; 2nd, that he should have been charged with $4,100, instead of $3,200 on account of a sale of certain real estate to Mr. Ming, the purchaser. In the settlement appealed from, the executor had been charged with ten per cent interest, which was calculated upon each receipt and disbursement from the date thereof till the settlement in June, 1879. The evidence tended to show that the executor had never kept the funds of the estate separate from his own, and that he had not kept, during all the time, books of account showing the items of disbursement. It, also, tended to show that he had used the funds of the estate in his private business. There was no evidence of any profits made by him or of any loans of the funds at any rate of interest. He received the children of testator into his own family and supported and schooled them. In his settlements he takes credit for annual allowances towards their education and maintenance, most of which were approved and passed by the court. His duty in this respect may have been exemplary and considerate enough, but it has not been successful in eliciting any approbation or encomiums from the beneficiaries. In her testimony Agnes says: "Julius was three or four years old when we went to executor's. We lived there during the war. Never had any spending money, and went barefooted. Had no attention whatever. Went to school a little. I was sent off to Farmer City about the time the land was sold. I have asked uncle Marshall to make an allowance for me, but he would not do it. He said he had eight or nine thousand dollars of ours, and wanted to give me his note for that amount."

It appears from the evidence that money could have been loaned readily at ten per cent per annum in Henry county since the war. In 1864, the executor sold the home place, consisting of 848 acres, for $4,242.50. In 1867, he sold 640 acres to one Ming. In the deed of the latter sale, the consideration, as expressed, was $4,100. In his first settlement it was reported at $3,200. This land may, and it may not, have been sold on its own merits. It appears that it was not sold for money, but that it was, along with 910 acres of his own land, sold for a stock of goods invoiced at between eleven and twelve thousand dollars. The purchaser did not want the 910 acres belonging to the executor, without the 640 acres belonging to the estate. How much the land of the estate contributed to the sale of the land of the executor, does not appear. The evidence, however, tends to show that the land was taken in the trade at $5 per acre, and that the market value of it at that time did not exceed that price. The court declined to hold him responsible for more than this price, and although the transaction has its unpleasant features, I do not feel called upon to disturb the ruling upon the evidence in the record.

The position taken by appellants, that the executor ought to be held responsible as a guardian or curator in this proceeding, cannot be maintained. His responsibility commenced as an executor, and it must necessarily continue until his final settlement and discharge as such. He received the assets in that capacity, and in submitting his annual and final settlements, he must be regarded as accounting for them in the same capacity. Nothing has happened to change his liability or terminate his authority as executor.

The question of exacting compound interest from him, as a delinquent executor, is both serious and important. Our statutes declare that " the court shall     *     * exercise an equitable control in making executors and administrators account for interest received by them on debts due the estate, and for interest accruing on money belonging to the estate, loaned or otherwise employed by them."

R. S. 1379, § 232. Under the authority of this section our probate courts would seem to be possessed with the power of courts of equity on the subject of interest. And inasmuch as executors and administrators are regarded as trustees in equity, it is natural that they should follow the practice which prevails in equity in charging trustees with interest. Unfortunately the practice prevailing there is by no means uniform. There never was an absolute rule governing the rate of interest, or the liability to pay compound interest. *Barney v. Saunders*, 16 How. 542; *Fox v. Wilcocks*, 1 Binney 194; *Hook v. Payne*, 14 Wall. 252. Interest was allowed at common law only on mercantile securities, or when it was expressly promised, or was implied from the usages of trade or other circumstances. *Foster v. Weston*, 4 M. & P. 589; 6 Bing. 709. In modern times the rate is fixed by law in the absence of express contract, and no circumstances of default, however aggravated they may be, will justify a change of the rate so fixed. In some states this rule has been applied in equity, and no accounting trustee can be held for more than the statutory rates in the absence of express contract. *Norris' Appeal*, 71 Pa. St. 106; *Bond v. Lockwood*, 33 Ill. 212. In most of the states the English doctrine of exacting interest from trustees has been recognized. But as the doctrine in England is without any absolute rule, the exaction of interest here, as there, presents no settled uniformity of practice. It has been said that compound interest should be exacted by way of punishment for breach of trust. *McKnight v. Walsh*, 23 N. J. Eq. 136.

But, considerations of this character are, in my judgment, out of place in a court of equity, and they are not generally approved at the present day. 1 Perry on Trusts, 471; *Att'y Gen'l v. Alford*, 4 D. G. M. & G. 843. In *Hollister v. Barkley*, 11 N. H. 511, Chief Justice Parker remarks: "Such interest is allowed in equity as is just and reasonable. New York Ch. Rules 79. And it is just and reasonable to allow interest on all sums which are due and

payable, or from the time when there should be a rest in the accounts. Annual rests may be allowed and interest cast on those rests." I think it may safely be said, that there are a few underlying principles, with which all orders of accounting should conform as near as the circumstances of each case will permit. 1st, A trustee is accountable for all interest or profits actually received by him from the trust fund, whether used in his private business or otherwise employed by him. Under no circumstances will he be permitted to retain any benefit or advantage from the trust fund, except his compensation or commissions. 2nd, He is, at all events, accountable for such interest or profits as he might have obtained by the exercise of reasonable skill and exertion in the management of the fund, whenever the character of his trust or the relation which he holds to the fund, requires him to make it productive. In all such cases he is, at least, accountable for such gains and profits, although the actual gains and profits may be less.

All orders for periodical rests and for compounding interest should be adopted, not for punishing the delinquent trustee, but for the purpose of attaining the actual or presumed gains, and to make certain that nothing of profit or advantage remains to the trustee, except, perhaps, his commissions or compensation. *Voorhees v. Stoothoff*, 6 Halsted 145; *Schieffelin v. Stewart*, 1 Johns. Ch. 620; *Jones v. Foxall*, 15 Beav. 388; *Dixon v. Storm*, 5 Redfield, (N. Y.) 419; *Pomeroy v. Benton*, 77 Mo. 64; *Ringgold v. Ringgold*, 1 Harris & Gill, 11; *Utica Ins. Co. v. Lynch*, 11 Paige 521; *Kyle v. Barnett*, 17 Ala. 306; *Johnson v. Miller*, 33 Miss. 553; *Hough v. Harvey*, 71 Ill. 72; *Att'y Gen'l v. Alford*, 4 De G. Mac. & G. 843; *Williams v. Powell*, 15 Beav. 461. It is often asserted that a special case must be made out to justify the exaction of compound interest, such as willful violation of duty or gross delinquency. *Clarkson v. De Peyster*, 1 Hopk. Ch. (N. Y.) 424; *Armstrong v. Campbell*, 3 Yerg. 201; *Hook v. Payne*, 14 Wall. 252; *Barney v. Sanders*, 16 How. 542. This is undoubtedly

true, but I think it will be found on examination of the cases that, at least, in most of them, the special circumstances were such as disclosed the actual gains to have been equivalent to such a computation, or the conduct of the trustee in withholding or destroying evidence of his gains, has left the court at liberty to presume they are fairly represented by such a computation. The burden of accounting for the actual gains and profits rests upon the trustee. Perry on Trusts, § 471; *Jones v. Foxall*, 15 Beav. 388. If he fails or refuses to furnish evidence of them, he invites the rule which shall most nearly approximate his actual gains, and leave no advantage or benefit to him by reason of his silence or refusal. Where, notwithstanding his failure to disclose his profits, they are in fact known to the court by means of other evidence before it, I conceive that the order of accounting should be framed with reference to approximating such gains, unless they should be less than a prudent management of the fund should have produced.

Where a trustee uses in his private business the trust fund, he is, *prima facie* liable, at least, for the legal rate of interest for the use of money. *Jones v. Foxall*, 15 Beav. 388. *Rocke v. Hart*, 11 Vesey 58; *Newton v. Bennet*, 1 Bro. Ch. side p. 362; *Williams v. Powell*, 15 Beav. 461. By legal rate, I allude to that rate which the law attributes to contracts, in the absence of stipulation upon the subject. Where it appears in proof that a higher rate could easily be obtained, the trustee should be accountable for such higher rate, always, of course, within the rates permitted by law. *Frost v. Winston*, 32 Mo. 489. A simple use of the funds by the trustee in his trade or business has not been viewed in the same light by all courts considering the matter. By some it has not been regarded as such gross delinquency as to justify more than simple interest, especially in absence of profits indicating a greater gain. *Rocke v. Hart*, 11 Ves. 58; *Newton v. Bennet*, 1 Bro. Ch. side p. 362; *Kyle v. Barnett*, 17 Ala. 306; *Johnson v. Miller*, 33 Miss. 553; while by others it has been denounced as

gross delinquency and willful violation of duty, justifying the charge of compound interest. *Burwick v. Halsey*, 4 Redf. 18; *Ackerman v. Emott*, 4 Barb. 626; *Dixon v. Storm*, 5 Redf. N. Y. 419; *Lansing v. Lansing*, 45 Barb. 182; *Lansing v. Lansing*, 31 How. Pr. 55.

The rule of exacting interest from delinquent trustees has, nowhere, been enforced more rigorously than in our own State. *In re Davis*, 62 Mo. 451; *Williams v. Petticrew*, 62 Mo. 460; *Frost v. Winston*, 32 Mo. 489; *Scott v. Crews*, 72 Mo. 261; *In re Camp*, 6 Mo. App. 560; *In re Camp*, 74 Mo. 192; *Pomeroy v. Benton*, 77 Mo. 64. From these cases it appears that compound interest has been exacted from defaulting trustees at the various rates of six, eight and ten per cent, according to the facts and circumstances of each case. In *Williams v. Petticrew*, *supra*, the administrator was charged with compound interest at the rate of ten per cent on the unreported funds used by him in his business. On all other funds, he was charged only simple interest. In *Scott v. Crews*, *supra*, an administrator whose letters had been revoked was charged at the rate of ten per cent. Only three rests were made in an account extending through fifteen years. In *Pomeroy v. Benton*, *supra*, an accounting partner was charged with compound interest at the rate of six per cent. But it appears from the decision that he had destroyed the book containing the transactions in which he had used the partnership funds, and had refused to give information of the profits made by him, thereby inviting the presumption which would hold him liable for the highest gains. In applying the principles underlying the subject of inquiry to the facts appearing in evidence, it will be necessary for us to consider the duties imposed upon the appellee as executor under the will of the testator, in respect to the estate committed to his charge. I do not feel called upon to pass upon the propriety of keeping this estate open so long. It is sufficient for the purposes of this accounting, that it was, in fact, kept open in obedience to the request of the testator as expressed in his will, which

contemplated that it should remain in the hands of the executor till the distributees attained their majority. Perhaps, the request of the testator could have been substantially fulfilled by closing the administration of the estate before that time, and passing the funds to the appellee in the capacity of guardian or trustee for the children. But measuring his liability by the relation of executor under which he assumed to act, it appears from the will that he was invested with ample powers of controlling and disposing of the estate so as to make it productive. And he well knew that it would, in all probability, remain in his hands until they attained their majority, unless he should sooner move for a final settlement and delivery to him as guardian or trustee.

His manifest duty was to place the funds at the highest rate of interest consistent with good security, so as to afford an income for the support of the beneficiaries without exhausting the principal. The law required him to make annual settlements and to include the interest in them as available assets of the estate. R. S. 1879, §§ 222, 231, 232. The devisees are entitled, as against the executor, to all the interest or gains actually received by him; or, at least, to such interest or gains as he should have obtained by a prudent and lawful management of the estate. It appears in evidence that money could be loaned readily at ten per cent interest, during all the time of his administration, except, perhaps, while the war was in progress. Instead of loaning the money on good security, he seems to have retained it under circumstances, which leave no doubt that it was used in his business, or converted to his use at pleasure. He fails to disclose the profits and gains made by him with it, and upon this showing the beneficiaries are entitled to the rate at which it could have been loaned. The court was right in holding him responsible for interest at the rate of ten per cent per annum.

It may be, that there are authorities to sustain the exaction of the compound interest called for by appellants,

and if the court had ordered such an account at the low rate of six per cent, I would have been inclined to pass it, under the evidence in the case pointing to the probable or presumed gains of the executor. But, as every case must be determined according to the facts and circumstances peculiar to it, I am satisfied that it would be inequitable to order interest compounded at the high rate of ten per cent per annum against the respondent. My reasons for this conclusion are as follows: First, the account extends through fifteen years. The result of the computation, like all such arithmetical results, would be surprising and excessive. It would in my judgment exceed what could be expected from any prudent and careful administration of the estate under ordinary circumstances. I think it would be a marvelous achievement for any trustee of ordinary skill and prudence to keep a fund of five or six thousand dollars so constantly and securely invested for a period of fifteen years, as to produce the net result of compound interest at ten per cent per annum. In the ordinary course of events, there would necessarily be intervals of irregular length between investments, not to say anything of possible loss and depreciation of security.

The ability of investing the interest annually as soon as collected, may well be doubted when we consider its moderate volume and the frequency with which it would have to be put out. The exaction of compound interest at such a high rate, for so long a period of time, would, in my judgment, be a departure from the leading principle which requires the chancellor to approximate as nearly as possible the actual or presumed gains and profits of the fund. Second, our statutes provide that when the executors and administrators " lend the money of the deceased or use it for their own private purposes, they shall pay interest thereon to the estate." R. S. 1879, § 231. It is to be observed that the rate of interest is not fixed; neither does the provision impose compound interest, either as a penalty for using the money or as the absolute measure of damages for

undisclosed profits. The rate of interest and the method of computing it are left subject to the equitable control of the court.

Now, in all his settlements the executor charged himself with interest, so that it can hardly be said he was concealing the fact of his use of the funds, or was acting in bad faith. The form and amount of these charges, as they appear in his settlements, indicate quite clearly that they were for his use of the fund, and the court must have so understood them. After thus approving his charges for use of the funds at simple interest during the whole period of his administration, it would hardly seem just, at the end of it, to impose upon him compound interest for the same thing.

While I am satisfied that the court was right in refusing to exact compound interest, I am not satisfied with the method adopted by the court for computing and applying the simple interest which the court adjudged. It appears that interest was calculated on the receipts and disbursements respectively, for the whole period of the administration, at the end of which the sum total of disbursements with interest was subtracted from the sum total of receipts with interest, upon which result judgment was entered.

The method of computing and applying interest in trustees' accounts, is only a means to an end, like the rate of interest adopted or the propriety of compounding it. No invariable method prevails as at law. *Riney v. Hill*, 14 Mo. 500. The beneficiaries are entitled to such method of calculation as shall most closely approximate the amount which would probably have resulted from a fulfillment of the obvious duties of the trust. Knowing, as the executor did, that the beneficiaries were dependent upon the fund or estate for their support, it was his duty to collect and appropriate the annual interest accruing on the fund to a discharge of the current disbursements made by him on account of the estate. The interest should be so computed and applied as to effect this object as nearly as it can be conveniently done. There are several methods of comput-

44—81

ing interest. The one adopted by the court is usually termed the mercantile method. Periodical rests and interest on balances are sometimes united with this method, *Hollister v. Barkley*, 11 N. H. 511; *Averill Coal & Oil Co. v. Verner*, 22 Ohio St. 372; *Brooks v. Robinson*, 54 Miss. 272; *Burwell v. Anderson*, 3 Leigh 359; *Granberry v. Granberry*, 1 Wash. (Va.) 246; *Massey v. Massey*, 2 Hill Ch. 492; *State v. Layton*, 3 Harr. 469; *Langdon v. Castleton*, 30 Vt. 295; 1 Am. Leading Cases 638. Periodical rests do not necessarily imply compound interest. The interest may be applied at the end of each year, or carried forward in an interest account. But in the absence of an order for such application, a decree to take an account with annual rests would imply and carry compound interest against the accounting party, if the balance was against him. The mercantile method, without rests or application of interest to current disbursements, is unsuited to a long account by a trustee extending through many years. The injurious effect of it is not felt in a short account of two or three years. As an instance of its working in a long account, I will call attention to the item of $60 for the taxes of 1866, as entered in the present account. The interest allowed to the executor on this disbursement amounts to $76.33, covering a period of twelve years and seven months, while it is apparent that at the time it was made, the executor had in his hands sufficient interest to pay it, and thus cut off the subsequent interest it is permitted to bear.

It is claimed by counsel that the method employed in this case was approved in *Stoong v. Wilkson*, 14 Mo. 116. The account in that case ran through only three or four years. It was passed by the court without comment. But in the case of *Frost v. Winston*, 32 Mo. 489, the same method was expressly disapproved. No particular method can be said to prevail in this state in respect to accounting in equity. The courts should in each case adopt the method best suited to the duties of the trust and the nature of the accounts. The method suggested by appellants of com-

pounding interest on each item of debit and credit is clearly erroneous. If the balance at any time should prove to be in favor of the executor, he would be receiving compound interest from the estate for his advances. The account in this case ought to be computed in such way as to appropriate the annual interest to the discharge of current disbursements, but not so as to admit of interest being computed upon interest. As already intimated, it may be necessary in some cases to compute interest upon interest in order to approximate the actual or presumed gains of the accounting party. But such is not the case before us. The rule in *Riney v. Hill*, 14 Mo. 500, for computing interest on legal demands, upon which partial payments have been made, is unsuited to trustees' accounts, in which the principle fund is being constantly increased by additional receipts and constantly diminished by repeated disbursements. I am not aware that it has ever been applied to such accounts

The method employed in *De Peyster v. Clarkson*, 2 Wend. 78, which was approved by Chanceller Kent, seems to meet the requirements of this case. Accordingly the judgment is reversed, and the cause remanded, with directions to calculate interest upon the accounts approved in the record, in conformity with the following rule and to enter judgment accordingly:

1st. To the available funds on hand June 8th, 1864, said to be $3,886.15, add the receipts of the year from June 8th, 1864, to June 8th, 1865. Next add together the disbursements during the same period and subtract the sum of them from the sum of the debits and receipts ascertained as aforesaid. The result will be the amount of principal on hand at the end of the year. Next, calculate the interest at the rate of ten per cent per annum upon the amount of available funds on hand June 8th, 1864, and on the receipts which came in during the year, from their respective dates. Next, calculate the interest at the same rate upon the disbursements during the year from their respective dates. Then subtract the sum of interest on the

disbursements from the sum of interest on debits and receipts. The result will be the sum of interest on hand at the end of the year, which is to be applied to the discharge of disbursements of the second and subsequent years.

2nd. In like manner add together the principal on hand at the beginning of the second year and the receipts of that year: Next subtract from this amount the sum of the disbursements of the second year, which remain undischarged if any, by application of the interest on hand at the beginning of the year. The result will be the amount of principal on hand at the end of the second year. Next calculate the interest as before on the principal first aforesaid, and on the receipts of the second year from their respective dates, for that year. Then calculate interest on so much of the disbursements of the second year as shall remain undischarged by application of interest on hand at the beginning of the year. Then subtract the sum of interest on the disbursements so ascertained from the sum of interest on the principal and receipts so ascertained. The result will be the amount of interest on hand at the end of the second year, which is not to be added to the principal of that year, but is to be carried on for the purpose of discharging subsequent disbursements. If a surplus of interest should remain after the payment of all subsequent disbursements with it, it is to be added to the principal only at the end of the account. In no event is it to bear interest

3rd. So continue the calculation for each year until the date of the final settlement June 8th, 1879. If the balance of interest for any year should be in favor of the executor, it will be applied to a reduction of the. debits chargeable against him in the succeeding year. When the balance of the whole account has been ascertained at the end thereof, then calculate simple interest on said balance at the rate of six per cent per annum up to the date of judgment.

EWING, C., concurs; PHILIPS, C., not sitting, having been of counsel before submission,