Burgess, J.
This is an appeal by defendant from a judgment approving the report of John H. Dryden referee to whom the cause had been referred by order of court, and by whom it was found that there was in the hands of defendant, assignee of Murdoch & Dickson, for distribution among their creditors, the sum of $8,236.75.
The partnership of Murdoch & Dickson in 1873, made a statutory assignment to defendant assignee for the benefit of its creditors of all its assets, consisting principally of real estate in the city and county of St. Louis. The first report by the assignee was not filed *493 until the twenty-third day of November, 1880, when it was duly approved. This report showed receipts by the assignee amounting to $37,532.76 and disbursements amounting to $34,076,[leaving abalance in his hands of $3,456.76. Of these disbursements $3,600 was credited to himself for services as assignee.
The second report was filed May 25, 1885, which shows receipts of $1,252.59, disbursements $1,148.64, leaving a balance in his hands of $3,560.71. On this report he credited himself for $150, for services as assignee. On January 23, 1886, a third account was filed showing no receipts and a balance of $3,522.15. On March 30,1887, a fourth account, showing disbursements for taxes $33.96, attorney’s fees $100, leaving a balance of $3,388.19. October 18,1887, a fifth account was filed, showing receipts from the sale of land $532.95, disbursements $29.50 and a balance of $3,891.64. March 27, 1888, a sixth account was filed showing disbursements $1, a balance of $3,890.64.
On December 15, 1888, a final report was filed, in which the whole account was set out, showing:
Balance from last report.....................................$3,890.64
Proceeds sale of lands .............................. ....... 1,725.65
Total..............................$5,616.29
Against -which tke assignee asked credit for amount paid out............... $ 54.81
Attorney’s fee paid H. H. Denison...... 200.00
Cash, retained for attorney’s fees,
W. H. Clopton .................. 150.00
H. H. Denison.................... 1,500.00
Cash retained for assignee’s compensation............................ 800.00 — $2,704.81
Balance claimed to he due hy assignee to the creditors.........$2,911.48
To this report, D. H. Armstrong, being one of the largest creditors, objected:
“1. To allowing claim of $800 as assignee’s fees, because such an amount is excessive, the assignee had *494 already been paid amounts in excess of any reasonable compensation; and tbe assignee having violated the provisions of the statute relating to assignments in neglecting and refusing to pay a dividend on allowed claims was entitled to no compensation.
“2. To allowing the claims amounting to $3,750 reserved by the assignee as his compensation.
“3. To allowing items of $150, $200 and $1,500 paid and to be paid by assignee for legal services,because such amounts are excessive; item of $1,500 has never been disbursed, but only held for disbursement; because the assignee will have had paid out, including items above enumerated, $3,157 for attorney’s fee, which is greatly in excess of necessary amount.
“4. To certain amounts, aggregating $1,145.53, credited as commissions for collecting rents.
“5. The exceptor asks that the assignee’s account be surcharged with interest on yearly balances with annual rests.
“6. He asks that the assignee’s accounts be charged with $300, this amount having been lost to the estate in interest penalties and costs by the assignee failing to pay taxes when the same became due.”
Upon the filing of these exceptions the court, over the objections and exceptions' of defendant, made an order referring the petition of defendant for his discharge as assignee, and the exceptions to his account, as well as the several accounts theretofore filed by him, to John W. Dryden as referee, to hear and determine said exceptions; to examine said accounts and ascertain and state the balance found by him properly due by said assignee; also to ascertain what assets, if any, remain in the hands of said assignee; also to determine what compensation, if any, said assignee is entitled to for his services, and his attorneys for their *495 services respecting said trust; and also to ascertain and report what dividend should be paid upon allowed claims.
The referee having failed to make report, on December 1, 1890, by consent of all parties to this suit, it was ordered that the exceptions to the final report of the assignee and his several accounts, and compensation of himself and attorneys be referred to John W. Dryden for the purposes and with the power and effect mentioned in the former order of reference. Said referee then proceeded with the investigation of the matters referred to him, and from his report the following facts in relation to the several objections are made to appear:
First. The services rendered after the first settlement and for which the assignee asked to retain $800 and $150 were the filing of six reports as above enumerated, selling three tracts of land for an amount aggregating $2,525; paying yearly taxes on said lands and court costs; collecting rents amounting to $18; defending two lawsuits brought against him as assignee, each of which lasted about six months; prosecuting a suit for partition of several lots of ground which lasted several years and produced net to the estate in 1887 the sum of $532.95; defending a suit begun by the collector for back taxes. In the conduct of said suits he was represented by attorneys. His accounts were prepared and filed by his attorney. One of the sales of land was by private negotiation, made through a real estate broker, who was paid $20 out of the estate for his services; the two other sales were made together at public auction, at the courthouse door, and produced $1,725. Besides the $2,525 realized from these sales, he also received said sum of $532.95 from a sale of lots made by a' commissioner appointed in said partition suit, and $229.05 from a sale in partition of another *496 parcel of land, also made by a commissioner; thus making the total sum of $3,285, received by bim from sales of land.
On tbe second exception the facts show that all but $150 objected to was included in the first account, and as these accounts were after notice to creditors allowed by the court the referee found that they could not be again reviewed even on final settlement. The exception as to the $150 was sustained.
By the third exception, four items of credit taken by the assignee for fees of W. H. Olopton and Henry H. Denison for their services as his attorneys, are objected to as follows:
March 2, 1881, fees of Henry H. Denison........................$ 100
June 25, 1888, fees paid Henry H. Denison..................... 200
December 10, 1888, fees of W. H. Clopton....................... 150
December 10, 1888, fees of Henry H. Denison.................... 1,500
By the exception, also, a general objection is made to the total of the assignee’s expenditure for attorney’s services amounting to $3,157, on the ground that they were excessive. The objection as to the first two items were overruled and as to the third one withdrawn; it appeared from the evidence that the $1,500 for which credit was asked was never actually paid and hence the objection was sustained and also because said amount had never been earned.
The fourth exception was overruled for the reason that the matters complained of were allowed by the court in the first account after, notice to creditors.
The facts developed by the evidence submitted on the fifth exception showed that in November, 1880, this trust might have been wound up, at which time the assignee had about $6,700.
The moneys thus in his hands, including the balance shown by the first account, he deposited as they were received, to the credit of his own personal account in bank, and not to the credit of the assigned estate, *497 or distinguished from his own moneys in anyway, and, thereby, converted them to his own use, and intermingled them with his own funds. The moneys so deposited by him in bank were drawn upon and used by him from time to time in his business of a real estate agent, in advancing moneys for his patrons, paying his debts, and in other, ways as he saw proper, and at various times after November, 1880, the balance of his account in bank, to the credit of which said moneys in his hands, as assignee, had been deposited, fell below the sum of $3,000. No investments of any of said moneys for the benefit of the estate were reported in any of his accounts, nor did he at anytime charge himself with any interest on any of said moneys, or with any profits made by him from the use of them.
No dividend was paid by the assignee to any of the creditors of the estate, although the hearing and allowance of .demands by him was concluded more than six years before the filing of his first account, and although there was no time after it was filed when the means on hand would not have permitted him, after reserving enough for proper fees, costs and expenses, to have paid to creditors, in dividends upon their demands, as much at least as $3,000, and after February 1, 1881, he might have paid to them on their demands as much as $3,800.
During the period from the allowance of his first account to the filing of his petition for discharge, the assignee did not comply with the provisions of the statutes requiring him to exhibit to the court a statement of his account at regular times. He exhibited such statements, only at the February and December terms, 1885, at the February and October terms, 1887, and the February and December terms, 1888.
In the years 1883 and 1884 the assignee paid out sundry sums for accrued penalties on delinquent taxes *498 assessed against the lands of the estate, and the costs of back tax suits brought to enforce the payment of such taxes. The sums so paid amounted in all to $350.20. The referee found that to the extent of said amount of $350.20 the assignee was guilty of waste.
Upon these facts the referee found that the assignee should be charged with six per cent interest with annual rests.
On the sixth exception the evidence showed that the assignee neglected to pay the general taxes in 1873, 1874, 1875, and 1876 on real estate belonging to said estate, which amounted to $103.59, and afterward as costs, penalties, and interest he paid $350.20 in excess of this amount, for which he took credit in his accounts. The referee found that this amount should be charged to the assignee on his discharge.
The second matter which was referred to the referee was “to ascertain and state the balance found by him properly due from said assignee.” Proceeding to do this in accordance with the general principle stated by him on pages 203 and 204 of the printed record,” the referee found the assignee indebted to the estate in the sum of $9,782.58. As fees for the assignee the referee found that he was entitled, in addition to the amounts received and accounted for in the first settlement (amounting to $3,750), to five per cent on the gross amount which he still owed the ’ estate. The referee was also directed to determine the amount of compensation which should be paid to the attorneys of the assignee.
To this report the assignee filed exceptions which were overruled and judgment rendered against defendant in accordance with said report, from which he appealed.
It is insisted by defendant that the action of the court in referring the final report of the assignee to *499 referee Dryden was unauthorized by statute and void, Section 461, Revised Statutes, 1889, provides that if no objections are filed to the final accounts and petition for a discharge, it must be referred to a commissioner to examine the merits of the application and to report to the court. The next section following, provides that if objections are made, “the court shall cause the same to be considered, and shall determine the same, as provided for by rules of the court or special orders made therein.”
Proceedings of this character are governed by the statute in regard to assignments for the benefit of creditors so far as applicable, and when not applicable, the court may, in the absence of any inhibition exercise such general inherent powers of which it may be possessed.
The section of the statute first quoted provides that if no person interested shall file written objections to the discharge of the assignee within one week after the filing of his petition for discharge, the court shall refer the application to the commissioners of the court, or one appointed for the case, to examine the merits of the application, and report to the court, etc.; but in the case at bar written objections to such discharge were filed, hence, that section alone does not control this case, which must be governed by section 462, in so far as is applicable. The question then arises as to the power of the court, the last section quoted being considered, to refer the petition for discharge to the same referee, for consideration, and to be passed upon by him.
This section provides, that the court shall cause the objections to such application “to be considered, and shall determine the same, as provided for by rules of the court or special orders made therein.” It would *500 seem from the language used, that it was discretionary with the court as to whether it would consider and determine the objections made to the assignee’s discharge, or whether it might not refer the matter as it did do, for the consideration of the referee, whose report was of course merely advisory.
But if there were any doubt as to the power of the court to take this course under the statute, there can be no question as to its right to do so, by agreement between the parties, entered of record, as was done in the case at bar. After the parties, by agreement entered of record, referred the case to Mr. Dryden, they will not now be heard to say the agreement was void, and the referee without authority to act in the premises.
A further contention is that the charge of interest against the assignee is unwarranted by the facts in the case, he not having been guilty of any fraudulent misconduct in managing the assets of the assigned estate.
Section 387, Revised Statutes, 1879, required the assignee within one month after the time for allowance of demands to pay upon the demands allowed, according to their right, as much as-the means on hand would permit, after reserving enough for' proper fees, costs, expenses and demands, whose trial might be legally continued or removed, and as often thereafter as a dividend of five per centum could be paid on the demands allowed, and a failure to do so was plainly a breach of duty on his part. No order of court directing him to do so was required, or in fact necessary. Moreover, the evidence showed that he mingled the funds with his own, deposited them in bank in his own name, and used them in his own private business. While the funds were thus being used by him, interest on demands against his assignors was accumulating, and under such circumstances it was but equitable and just that he should be charged with interest on that which was in *501 his, hands, and which in justice to creditors as well as to the assignors should have been paid out on demands allowed as provided by statute. Our statute does not prescribe the rate of interest to be paid by a derelict assignee, and each case must be governed by its own peculiar facts.
It has been said that “where a trustee uses in his private business the trust fund, he is prima facie liable, at least, for the legal rate of interest for the use of money.” Cruce v. Cruce, 81 Mo. 676. Again in the same case it is said: “A simple use of the funds by the trustee in his trade or business has not been viewed in the same light by all courts considering the matter. By some it has not been regarded as such gross delinquency as to justify more than simple interest, especially in absence of profits indicating a greater gain. Rocke v. Hart, 11 Ves. 58; Newton v. Bennet, 1 Bro. Ch. side p. 362; Kyle v. Barnett, 17 Ala. 306; Johnson v. Miller, 33 Miss. 553; while by others it has been denounced as gross delinquency and willful violation of duty, justifying the charge of compound interest. Burwick v. Halsey, 4 Redf. 18; Ackerman v. Emott, 4 Barb. 626; Dixon v. Storm, 5 Redf. N. Y. 419; Lansing v. Lansing, 45 Barb. 182; Lansing v. Lansing, 31 How. Pr. 55.
The rule in this state has been that, when the trustee has used the money for his own purposes, or for his own private gain, he may be charged with the highest legal rate of interest. In re Davis, 62 Mo. 450; Williams v. Heirs of Petticrew, 62 Mo. 460; Frost v. Winston, 32 Mo. 489; Scott v. Crews, 72 Mo. 261; Camp’s Creditors, etc., v. Camp’s Adm’r, 74 Mo. 192.
It is insisted that, under the circumstances disclosed by the record, great injustice was done the assignee, especially in charging him with interest, and compounding it annually, on the amount found by the referee to be due to the assigned estate by defendant on the *502 fifteenth day of December, 1888. This contention is predicated of the fact that eight months elapspd after the referee was appointed, before he took action in obedience to the order of reference, which necessitated a renewal of that order and deferment of the distribution of the funds in his hands among the creditors of the estate, for which it is contended he was in no manner responsible, and should not be required to pay interest during that time.
A sufficient answer to this contention is, that the assignee was the primary cause of the delay, in not rendering a correct account of the affairs of the estate but for which in all probability no objections to his petition for discharge would have been filed and further investigation of his settlements rendered necessary. He could have avoided this delay and the payment of this interest by disbursing the money among the creditors as it was his duty to do, and should not now be heard to complain of that which was the consequence of his own neglect, and use of the money. . He seems to have' continued to use the money after his final settlement just as he did before, and there was no injustice done him by the referee in charging him with six per cent interest per annum compounded annually.
The remaining points are mostly with respect to matters resting almost entirely within the discretion of the referee and the trial court. They are in respect to taxes and penalties for the nonpayment thereof by the assignee, attorney’s'fees, and compensation for services of himself as assignee. Evidence was heard by the referee pro and con in regard to all these matters. And his report with respect thereto was subsequently passed upon and approved by the court, to the correctness of whose finding and judgment much must be conceded under such circumstances.
We think, however, that the assignee should have *503 been allowed credit for the amount claimed, to wit, $150, for legal services rendered the estate by W. H. Olopton. All objections were withdrawn to the allowance of this claim, which would seem to have removed any possible objection to its allowance. For the failure and refusal to allow credit for this item the judgment is reversed and the cause remanded with directions to the court below to enter up judgment according to this opinion. Defendant to have judgment for costs of this appeal.
All of this division concur.